Opinion
PAPAS, J.
The issue presented to us by this appeal is whether each of the doctors, assignors of the plaintiff, is entitled to an expert witness fee in light of the provisions of section 68092.5 of the Government Code. This section provides as follows: “(a) A person who is not a party to the *Supp. 3 action and who is required to testify before any court or tribunal, or in the taking of a deposition, in any civil action or proceeding, solely as to any expert opinion which he holds upon the basis of his special knowledge, skill, experience, training or education, and who is qualified as an expert witness shall receive reasonable compensation for his entire time required to travel to and from the pflace where the court or other tribunal, or in the taking of a deposition, the place of taking such deposition, is located and while he is required to remain at such place pursuant to subpoena. The court may fix the compensation for such appearance, in addition to such witness fees otherwise allowed by law, at such amount as seems reasonable to the court, upon motion by any party to the action or by the person required to testify and such fees shall be paid by the party requiring such witness to attend, but such fees shall not be allowable costs or disbursements.”
This section .was passed by the Legislature in 1968 for the purpose, according to counsel, of eliminating the confusion and abuses which existed when physicians and surgeons, who had no particular interest in the case, were subpoenaed to testify without prior arrangement for payment other than the ordinary witness fees.
Excepting the assigned claim of Dr. Wass, each of the doctors whose assigned claim is involved in this proceeding medically examined or treated a party to a personal injury action or Industrial Accident Commission proceeding. Thereafter, without a prior antecedent agreement for payment of expert witness fees, the doctors were subpoenaed to either testify in those proceedings or his deposition was taken in connection therewith.
The question of whether a witness is called upon to testify solely as to any expert opinion or is called to testify as a percipient witness who has knowledge of specific facts of the patient’s condition was discussed by our Supreme Court in City & County of S. F. v. Superior Court (1951) 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418].
In this case one Hession had brought a personal injury action against the City and County of San Francisco and the Western Pacific Railroad and his attorneys requested that a Dr. Catton specializing in nervous and mental diseases examine Hession concerning his allegations that he had suffered brain concussion, nerve root damage and nervous shock. Dr. Catton did so on two occasions.
*Supp. 4 Thereafter Catton’s deposition was taken at which he refused to answer questions concerning Hession’s condition, stating that he did not advise or treat Hession; that the sole purpose of the examination wás to aid Hession’s attorneys in the preparation of a lawsuit for Hession; and that he was the agent of the attorneys. He also testified in his deposition that he did not advise or treat Hession and filed an affidavit that he did not at any time prescribe or treat Hession as a patient. The court held that a physician has no privilege personal to himself, not to testify without payment of more than ordinary fees, merely because the information was acquired through his special training stating: “Petitioner asks him to testify, not by reason of his expertness in a special field, but because of his knowledge of specific facts as to Hession’s condition, facts pertinent to an issue to be tried. He is like any other witness with knowledge of such facts; it is immaterial that he discovered them by reason of his special training. In testifying as a witness he would simply be imparting information relevant to the issue, as he would had he been a witness to the accident in which Hession was injured. ‘[A] physician who has acquired knowledge of a patient or of specific facts in connection with a patient may be called upon to testify to those facts without any compensation other than the ordinary witness receives for attendance upon the court.’ [Citations.]” (At p. 234.)
Dr. Catton was not required to testify, however, because of the attorney-client privilege under the then section 1881, subdivision 2 of the Code of Civil Procedure holding that Catton was an intermediate agent for communication between Hession and the attorneys and Hession could invoke the attorney-client privilege which he had done.
The language of the City & County of S. F. case is nearly similar to the language contained in the Medical-Legal Treaty drafted by the California Bar and the California Medical Association section VII, D (1) (a) which reads as follows: “a. Doctor as a Witness to the Facts—Any person who has knowledge of facts on a relevant issue may be called upon to testify as to these facts. A physician who has acquired knowledge of a patient or of any specific factor in connection with a patient may be called upon to testify as to those facts without any compensation other than the regular statutory fee which all witnesses are entitled to when they appear in court. It is immaterial that the doctor discovered the facts by reason of his special treatment; however, it is customary for the attorney and the doctor to agree on the actual witness fee before the doctor’s testimony.”
*Supp. 5 It appears that it is immaterial whether the doctor examines, prescribes or treats the patient. If the doctor has knowledge of specific facts pertinent to an issue to be tried, it is immaterial that he discovered them by reason of his special training or expertise, he is just like any other witness who had witnessed the accident and all he is entitled to is ordinary witness fees.
In the San Francisco case had Hession not invoked the attorney-client privilege under section 1881, subdivision (21) of the Code of Civil Procedure (now Evid. Code, §§ 950-962) he would have been compelled to testify in behalf of plaintifi" or defendant and receive only the ordinary witness fee.
The case of Dr. Warren Wass is a classic example of an expert witness who comes squarely under 68092.5 subdivision (a) and the San Francisco case. Wass was not called because he had knowledge of specific facts as to the injured person’s condition, but because of his expertness in a special field, namely, radiology. He had not examined the person, treated her, or prescribed for the person nor did he have knowledge of specific facts pertinent to an issue to be tried. He was not a percipient witness. He was called solely as to an expert opinion which he held as a qualified expert in radiology. He is entitled to an expert’s fee. Had Dr. Wass examined the party, taken X-rays of any injured member of the litigant’s body he would have knowledge of specific facts as to his condition and he would be required to testify.
The real issue here seems to be whether a doctor who has examined and/or treated the patient who is asked to go beyond the specific facts he acquired from the examination and treatment and express his opinion as to the patient’s prognosis based upon his medical expertise is he then entitled to compensation pro tanto or by apportionment.
Plaintiff argues that fairness would dictate that the doctor should get something more than ordinary witness fees if he is called upon to testify not only to his knowledge of the specific facts of the examination and treatment but of his prognosis as an expert. Plaintifi" argues that apportionment on a pro tanto basis is reasonable.
Defendant argues that the term “solely as to any expert opinion” means just that and cites the case of Dr. Wass as the example of an expert witness who is entitled to expert fees.
*Supp. 6 The question is one of statutory interpretation. What did the Legislature intend when it stated “solely as to any expert opinion which he holds upon the basis of his special knowledge, skill, experience, training or education . . . If the expert is called upon to testify both as to his knowledge of specific facts as to the party’s condition as well as testimony by reason of his expertise in a special field it obviously is for a dual purpose and his testimony is not solely as to any expert opinion he holds in a specialized field. While it would appear reasonable to allocate his testimony and compensate the expert pro tanto, it is not within the province of this court to legislate. Had the Legislature intended that such an expert be compensated pro tanto all it had to do is leave out the word “solely” then the court could properly make the allocation.
This court has had occasion to review the legislative history of section 68092.5. The Legislative Counsel of California has advised that upon examination o.f the Assembly and Senate Journals they do not contain any published statements or opinions relating to section 68092.5.
As introduced by Assemblyman Z’berg on March 21, 1968 the form of Assembly Bill No. 1132 was as follows: “A person who is not a party to the action and who is required to testify before any court or tribunal in any civil action or proceeding, as to any expert opinion which he holds upon the basis of his special knowledge, skill, experience, training or education, and who is qualified as an expert witness shall receive reasonable compensation for his entire time required to travel to and from the place where the court or other tribunal is located and while he is required to remain at such place pursuant to subpoena. The court may fix the compensation for such appearance, in addition to such witness fees otherwise allowed by law, at such amount as seems reasonable to the court, upon motion by any party to the action or by the person required to testify and such fees shall be paid by the party requiring such witness to attend, but such fees shall not be allowable costs or disbursements.”
The following explanation apparently appeared with the bill: “AB 1132 was introduced at the request of the California Medical Association. The bill adds Section 68092.5 to the Government Code to allow a court in any civil action to fix the compensation of a physician and surgeon who testifies as an expert witness under a subpoena. The compensation is made a non-allowable cost to be paid by the party who requires the attendance of the expert witness.
“Comment: Existing law states that an expert witness may be required to testify to facts within his knowledge without any compensation other *Supp. 7 than that received by an ordinary witness. Additional compensation must arise from an express agreement. The Association claims that physicians and surgeons have been subpoened as expert witnesses where they have had no direct contact with the case, and have been refused compensation as an expert witness by the party issuing the subpoena. An adverse party can also subpoena the physician or surgeon of the other party as an expert witness at the cost of the statutory fee. Although an action in implied contract probably could be brought by the expert witness for extra compensation, AB 1132 provides a direct remedy.”
It is quite clear that the bill in its original form as introduced does not contain the word “solely. ”
On April 25, 1968, the bill was amended in the Assembly as follows: “A physician and surgeon who is not a party to the action and who is required to testify before any court or tribunal in any civil action or proceeding, as to any expert opinion which he holds upon the basis of his special knowledge, skill, experience, training or education, and who is qualified as an expert witness shall receive reasonable compensation for his entire time required to travel to and from the place where the court or other tribunal is located and while he is required to remain at such place pursuant ito subpoena. The court may fix the compensation for such appearance, in addition to such witness fees otherwise allowed by law, at such amount as seems reasonable to the. court, upon motion by any party to the action or by the person required to testify and such fees shall be paid by the person requiring such witness to attend, but such fees shall not be allowable costs or disbursements.
“An express contract entered into between the physician and surgeon and the party requesting or requiring him to testify relating to compensation, shall be enforceable and shall prevail over the provisions of this section. ” (Italics indicate amendment.)
On May 25, 1968, it was again amended in the Assembly as follows: “A physician and surgeon who is not a party to the action and who is required to testify before any court or tribunal, or in the taking of a deposition, in any civil action or proceeding, as to any expert opinion which he holds upon the basis of his special knowledge, skill, experience, training or education, and who is qualified as an expert witness shall receive reasonable compensation for his entire time required to travel to and from the place where the court or other tribunal, or in the taking of a deposition, the place of taking such deposition, is located and while he is *Supp. 8 required to remain at such place pursuant to subpoena. The court may fix the compensation for such appearance, in addition to such witness fees otherwise allowed by law, at such amount as seems reasonable to the court, upon motion by any party to the action or by the person required to testify and such fees shall be paid by the party requiring such witness to attend, but such fees shall not be allowable costs or disbursements.
“An express contract entered into between the physician and surgeon and the party requesting or requiring him to testify, relating to compensation, shall be enforceable and shall prevail over the provisions of this section.” (Italics indicate amendment.)
This bill was amended in the Senate on July 22, 1968, to read as follows: “Aperson who is not a party to the action and who is required to testify before any court or tribunal, or in the taking of a deposition, in any civil action or proceeding, solely as to any expert opinion which he holds upon the basis of his special knowledge, skill, experience, training or education, and who is qualified as an expert witness shall receive reasonable compensation for his entire time required to travel to and from the place where the court or other tribunal, or in the taking of a deposition, the place otherwise allowed by law, at such amount as seems reasonable to the court, upon motion by any party to the action or by the person required to testify and such fees shall be paid by the party requiring such witness to attend, but such fees shall not be allowable costs or disbursements.
“An express contract entered into between the physician and surgeon and the party requesting or requiring him to testify relating to compensation, shall be enforceable and shall prevail over the provisions of this section.” (Italics indicate amendment.)
It is obvious and apparent that this is the first time the word solely appears in the bill. In this form, it was passed by the Senate on July 24, 1968, and by the Assembly on July 26, 1968, as amended by the Senate.
On July 30, 1968 the following letter by the California Medical Association was directed to the Governor urging him to sign the bill as passed by both houses:
“Dear Governor Reagan:
“As president of the California Medical Association and on behalf of the nearly 24,000 members of that organization, may I *Supp. 9 respectfully ask your signature enacting Assembly Bill 1132 into law.
“There is no opposition to this bill and it merely provides for the correction of a possible inequity when professional witnesses are subpoened and have no particular interest in the case. This bill would allow the court, at its discretion, to order reasonable reimbursement for the time and professional knowledge of a witness. This cost would be borne by the litigants and would not involve the expenditure of public money.
“For these reasons, we respectfully urge your favorable consideration of Assembly Bill 1132.
“Sincerely yours,
Malcolm C. Todd, M.D.
President
California Medical Association”
(The documents referred to herein have been received by the court through the office of our local state senator and have been placed in the file of this action for reference.)
In reviewing the legislative history of this bill it is clear that, as introduced, it was intended to permit the court to compensate any person who qualified as an expert to receive compensation. Apparently the medical profession wanted to limit compensation to merely physicians and surgeons. They were unsuccessful. It applies to all experts. But the insertion of “solely” into the bill leads to the inescapable conclusion that in order for the expert to receive compensation for his expertise he must testify solely as an expert, unless,, of course, there is a prior antecedent agreement for payment. If he is a percipient witnéss or examines, prescribes and treats the person and is called upon to testify upon these matters and in addition thereto is asked to express his opinion as to prognosis or other subjects upon which he is an expert he is not being called upon to testify solely as an expert and therefore cannot be compensated as an expert. He is entitled only to the regular witness fees as any other witness would be.
In our opinion this is precisely what the Legislature intended and what section 68092.5 of the Government Code provides. It is clear also that *Supp. 10 this is what the sponsors of the bill, the California Medical Association, wanted when it urged the Governor to sign the bill when it stated “it merely provides for the correction of a possible inequity when professional witnesses are subpoened and have no particular interest in the case.”
Accordingly, the judgment of the municipal court with reference to Thomas Jefferson Huff, Jr., M.D., Louis P. Armanino, M.D., Stanley Clark, M.D. and Tucker Barth, M.D., is reversed and the municipal court is directed to enter judgment in favor of the aforementioned parties for amounts due each of them as ordinary witnesses at the rate of $12 per day plus mileage at the rate of 20 cents per mile one way. With reference to Warren A. Wass, M.D., the judgment of the municipal court is affirmed.
Dozier, P. J., and Darrah, J., concurred.