[No. C011911. Third Dist. Aug. 11, 1994.]

ANNETTE J. BRUN, Plaintiff, v.
STEVEN D. BAILEY, Defendant and Appellant;
MICHAEL D. HANLEY, Movant and Appellant.

**COUNSEL**

Favor Moss & Enochian, Steward C. Altemus and J. Michael Favor for Defendant and Appellant.

Halkides & Morgan and Annette R. Skene for Movant and Appellant.

**OPINION**

**PUGLIA, P. J.**—Michael D. Hanley (appellant), a chiropractor, appeals from an order denying his motion for a protective order (Code Civ. Proc., § 2025, subd. (i)), to direct Stephen D. Bailey (defendant) to pay appellant an expert witness fee. We shall hold that a health care practitioner who treats a civil litigant, and is thereafter deposed as a percipient witness by an opposing party in that litigation, is not entitled to an expert witness fee unless asked to express an opinion during the deposition.

I

Annette J. Brun (plaintiff) sued defendant and others for injuries sustained in an automobile accident. Appellant provided plaintiff with chiropractic treatment for her injuries during the period from July 1988 to September 1990. In March 1991, defendant moved to compel appellant to appear and answer questions at a deposition, pursuant to Code of Civil Procedure sections 1992, 2020 and 2023 (further statutory references to sections of an undesignated code are to the Code of Civil Procedure). Counsel for defendant asserted in support of the motion that he had attempted to obtain appellant's cooperation in setting the deposition, but appellant refused to attend a deposition unless he received payment of an expert witness fee in the amount of $250 for the first hour and $200 per hour for each subsequent hour. Counsel for defendant declared he had informed appellant that defendant would not ask appellant any questions calling for an expert opinion.

Both plaintiff and appellant opposed the motion.[1] Appellant asserted that he is entitled to an expert witness fee when called as a witness, by virtue of section 2034, subdivision (i)(2). Appellant alleged he had been deposed in an unrelated civil action by defendant's counsel, who persisted in asking questions calling for his expert opinion and then refused to pay appellant's standard expert witness fee; appellant alleged he expected defendant's counsel to repeat this conduct while deposing appellant in the instant matter.

---

[1]Pursuant to the stipulation of the parties, plaintiff has been dismissed as a party to this appeal.

The superior court granted defendant's motion to compel appellant to attend and answer questions at a deposition. The court ruled, "[a]s the treating chiropractor, the witness is required to submit to a deposition to answer questions relating to the facts of the case, including the history given to the witness, the injuries observed, the treatment given, the diagnosis made, and any prognosis which the witness may have already rendered in the course of his care and treatment of the plaintiff." The court explained that defendant's counsel, in conducting the deposition, ". . . may not dissect the facts of the treatment, diagnosis, or prognosis in order to draw out the witnesses' [sic] expert opinion such as, for example, why certain factors were more important to the diagnosis or prognosis than others." Given that defendant had tendered the $35 statutory witness fee, the court concluded appellant did not have the right to refuse to be sworn and deposed as to "fact questions." The court also denied both appellant's and defendant's requests for sanctions.

Prior to the deposition, appellant moved for a protective order.[2] On May 7, 1991, the superior court issued a protective order permitting appellant to employ counsel to advise him as to whether or not deposition questions posed to him by counsel for defendant called for fact or opinion. In an attempt to forestall problems between counsel for appellant and defendant, the court indicated in its order:

"[Appellant] is a fact witness. He must answer questions relating to the facts of his treatment, diagnosis, and any prognosis which he may have rendered to the plaintiff in the past as a treating chiropractor. The parties seem to be at odds as to what is a fact question and what question calls for an opinion. It is true that when a health care professional diagnoses and treats a medical complaint, illness, or malady, the treatment and diagnosis are rendered based on the expertise and through the employment of the opinions of the practitioner as to the proper diagnosis and treatment. However, the fact that expertise was used in rendering a diagnosis does not make the fact of the diagnosis or the fact of the prognosis an expert opinion giving the witness the right to a professional fee over and above that provided for in the Government Code. To insist, as [appellant] has, that it is unreasonable to subject a treating health care practitioner to a deposition when all of the information is contained in the medical records is simply not correct. [Appellant] may be questioned as to what he observed by way of his examination of the plaintiff, plaintiff's statements to him, the ultimate treatment plan which he decided upon, the treatment rendered, and any prognosis he may have rendered in his records as to the plaintiff's recovery.

---

[2]Appellant also challenged the order compelling his attendance at deposition by petition for extraordinary writ which this court denied on May 7, 1991.

Counsel for [defendant] may not ask questions such as, 'Doctor, why was this observation in your record significant to you?'; 'What other treatment options were available to you in the course of your treatment of plaintiff?'; 'Why did you choose treatment course A versus B?'; 'What is the significance of this observation which you note in your record?'; or any other question which asks the witness to explain why he did or did not do any act relating to the treatment, examination, diagnosis, or prognosis of plaintiff. [Appellant] must answer questions, if requested, as to 'What did she tell you?', 'What did you observe?', 'What treatment did you render?', 'What diagnosis did you make?', 'What prognosis, if any, did you make in the treatment for her future recovery?' Should [appellant] not answer fact questions, the Court would entertain another motion for sanctions."

Appellant was deposed on May 8, 1991. Following the deposition, appellant moved for payment of expert witness fees for the deposition in the instant matter, held May 8, 1991, as well as for a deposition conducted by defendant's counsel in an entirely separate lawsuit on January 15, 1991, on the ground that counsel for defendant asked appellant opinion questions during both depositions, thus entitling appellant to expert witness fees as provided in section 2034, subdivision (i)(2). Defendant opposed the motion and moved for sanctions. In reply to defendant's opposition, appellant clarified that he was pursuing the motion under the procedure to obtain a protective order set out in section 2025, subdivision (i).[3] On July 10, 1991, the superior court entered an order denying the motion for a protective order requiring the payment of an expert witness fee, and further denying defendant's request for sanctions.

On July 16, 1991, appellant moved to vacate the orders of July 10 and April 16. The superior court denied the motion to vacate on August 19, 1991. On September 11, 1991, the superior court denied defendant's request for attorney fees as sanctions, but indicated: "Even though [appellant] has tenaciously come again and again to reargue matters which the Court has previously found unmeritorious, and that the rearguments have long since passed the point of not harassing [defendant], [appellant] is nevertheless not a party, and the request for monetary sanctions, even though greatly warranted in this case, is denied." (Italics deleted.)

On September 6, 1991, appellant filed a notice of appeal from the orders of April 16 (compelling appellant's attendance at the deposition), July 10

---

[3]Section 2025, subdivision (i) provides in pertinent part: "Before, during, or after a deposition, any party, any deponent, or any other affected natural person or organization may promptly move for a protective order. The motion shall be accompanied by a declaration stating facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion. [¶] The court, for good cause shown, may make any order that justice requires to protect any party, deponent, or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. . . ."

(denying appellant's motion for an expert witness fee), and August 19, 1991 (denying appellant's motion to vacate the previous two orders). Subsequently, defendant moved to dismiss the appeal. On February 21, 1992, we granted the motion to dismiss insofar as it challenged the order compelling attendance and the order denying the motion to vacate that order.

On October 2, 1991, defendant noticed a cross-appeal from the April 23, July 10 and September 11, 1991, orders denying defendant's requests for sanctions.

## II

At the threshold, we consider whether the orders denying appellant's motion for an expert witness fee and denying appellant's motion to vacate that order are appealable. Defendant contends these orders are not appealable because they are in the nature of discovery orders, and because appellant is not a party to the underlying litigation and therefore has no standing to appeal. We disagree. Although, technically, an order denying a motion for a protective order compelling the payment of an expert witness fee is an order arising during discovery, the rationale for making discovery orders nonappealable does not apply to such an order, which is more accurately characterized as a collateral order akin to a final judgment.

"An appeal may be taken from a superior court in the following cases: (a) From a judgment, except (1) an interlocutory judgment . . . ." (§ 904.1.) "As Witkin explains, 'the intent . . . is to codify the final judgment rule, or rule of one final judgment, a fundamental principle of appellate practice in the United States. The theory is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.' " (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1036 [234 Cal.Rptr. 739], quoting 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 43, p. 67, italics deleted.)

" 'A necessary exception to the one final judgment rule is recognized where there is a final determination of some collateral matter distinct and severable from the general subject of the litigation. If, e.g., this determination requires the aggrieved party immediately to pay money or perform some other act, he is entitled to appeal even though litigation of the main issues continues. Such a determination is substantially the same as a final judgment in an independent proceeding. [Citations.]' " (*United Pacific Ins. Co.* v. *Hanover Ins. Co.* (1990) 217 Cal.App.3d 925, 941 [266 Cal.Rptr. 231], quoting 9 Witkin, Cal. Procedure, *supra*, Appeal, § 45, p. 69, italics deleted.)

"The earlier cases which established this exception to the one final judgment rule required something more than a final collateral order; i.e., not all final collateral orders were appealable, but only those which directed payment of money or performance of some other act. [Citation.]" (9 Witkin, Cal. Procedure, *supra*, Appeal, § 47, pp. 70-71.) However, some of the more recent cases have disregarded this limitation. (*Henneberque* v. *City of Culver City* (1985) 172 Cal.App.3d 837, 841, fn. 3 [218 Cal.Rptr. 704].)

In *Henneberque* v. *City of Culver City, supra*, 172 Cal.App.3d 837, after a remittitur issued directing the superior court to order a city to provide an employee with an administrative hearing on his demotion, the employee moved for issuance of a peremptory writ of mandate directing the city to provide him with such a hearing and to pay him attorney fees and backpay for the period until such a hearing was provided. The superior court granted the motion for a demotion hearing, but denied the motion for attorney fees and backpay. The employee appealed from the denial of the motion. (*Id.* at pp. 839-841.) The appellate court recognized the interlocutory nature of the appeal, but held the motions for attorney fees and backpay were appealable as orders on collateral matters. The court explained the motions were ancillary to the main cause, and the order denying those motions finally determined collateral issues between the parties, leaving no further judicial action to be performed. (*Id.* at pp. 841-842.)

In *McClearen* v. *Superior Court* (1955) 45 Cal.2d 852 [291 P.2d 449], the People filed a motion for a lien against a judgment in an action in the justice court brought by an employee against his employer for back wages. When the justice court denied the motion, the People appealed to the superior court. The superior court ordered a trial de novo, which resulted in an order granting the People's motion for a lien. The employee then sought certiorari to annul the superior court's entertainment of the People's appeal as beyond its jurisdiction. (*Id.* at pp. 854-855.) The Supreme Court held the order denying the motion for a lien was appealable, explaining, "[a] lien claimant is obviously a party to the proceeding on his motion for a lien, even though he does not seek by intervention to become a party to the main action, and his failure to pursue the optional remedy of intervention cannot be considered as having any adverse effect upon his right to appeal from a denial of his motion." (*Id.* at p. 856.)

"It is clear that the denial of the motion amounted to a final determination of the People's right to a lien, and it is the general rule that a final determination of litigation as to a party constitutes an appealable order or judgment. [Citations.] These decisions all involve intervention, but the rule

is equally applicable in any situation where the statute expressly authorizes the proceeding and the order finally disposes of the rights of the party." (*McClearen* v. *Superior Court, supra*, 45 Cal.2d at p. 856; see also *Spencer* v. *Spencer* (1967) 252 Cal.App.2d 683, 688, 690 [60 Cal.Rptr. 747] [discharged attorney who had represented wife in dissolution action and withheld marital funds, asserting a lien for attorney fees, was made a party by husband's motion for order compelling attorney to transfer the funds to husband; denial of husband's motion was appealable].)

In this case, section 2025, subdivision (i), authorizes appellant's motion for a protective order requiring defendant to pay appellant an expert witness fee. By bringing the motion, appellant became a party to the proceeding on his motion to obtain an expert witness fee. He, therefore, has standing to appeal. The fee issue is a collateral matter distinct and severable from the general subject of the underlying litigation. The decision of the superior court denying the motion for payment of the fee finally determined the rights of the parties to that collateral matter, leaving no further judicial action to be performed. Appellant's pursuit of this appeal from the denial of the motion can have no effect on the course of the underlying litigation.[4]

It is generally the rule, however, that discovery orders are not appealable and do not constitute orders on collateral matters subject to immediate review on appeal. (See, e.g., *Southern Pacific Co.* v. *Oppenheimer* (1960) 54 Cal.2d 784, 786 [8 Cal.Rptr. 657, 356 P.2d 441] [order sustaining objections to interrogatories not appealable].) In *Southern Pacific*, the court explained that a discovery order ". . . is in the nature of a procedure for the compelling of evidence to prove or disprove the truth of the issues directly involved in the action and an order made relating thereto cannot be properly classified as a final determination of a collateral matter." (*Ibid.*) "The rationale for this rule is that in the great majority of cases the delay due to interim review is likely to result in harm to the judicial process by reason of protracted delay [citation] and discovery orders may be reviewed on appeal from a final judgment on the merits. [Citations.]" (*Warford* v. *Medeiros* (1984) 160 Cal.App.3d 1035, 1041 [207 Cal.Rptr.94] [Hawaii court issued commission for deposition of nonparty witnesses in California; order limiting questions that could be asked of the witnesses in deposition held subject to appeal because no final review of the underlying action could take place in California].)

---

[4]Witkin has questioned the doctrinal soundness of the decisions in *McClearen* and *Spencer*, pointing out the decisions may be read as simply permitting appeals from judgments in special proceedings. (See 9 Witkin, Cal. Procedure, *op. cit. supra*, Appeal, §§ 47, 74, pp. 71-72, 97-99.) We see no reason to decide whether the instant order is an appealable collateral order or rather an appealable judgment in a special proceeding.

The rationale of the rule applies to preclude the appeal of orders enforcing discovery or the production of evidence. (See 9 Witkin, Cal. Procedure, *op. cit. supra*, Appeal, § 86, pp. 107-108.) ▆▆ But the rationale does not apply in this case involving an order denying a witness's motion for a protective order requiring the payment of an expert witness fee for deposition testimony, made after the deposition was concluded. The motion for a protective order was not designed to compel evidence or to prove or disprove the issues in the underlying action. Unlike discovery orders relating to evidence, review of the instant order will result in no delay to the underlying action whatsoever. And, were we to conclude that appellant is not a party to the proceeding on his motion for an expert witness fee, appellant would have no right to seek review of the superior court's denial of his motion on appeal from the final judgment in the underlying action.

Accordingly, we hold the order denying appellant's motion for a protective order to require defendant to pay appellant's expert witness fee is appealable as an order from a collateral matter finally adjudicating the rights of the parties to that matter.[5]

III

▆▆ Appellant contends he provided plaintiff with chiropractic treatment as a treating health care practitioner,[6] and is therefore entitled to an expert witness fee pursuant to section 2034, subdivision (i)(2), because the questions he answered at the deposition necessarily called for his opinion, he was asked for his expert opinion during the deposition, and the legislative history of the statute indicates treating health care practitioners must be paid expert witness fees when examined regarding their provision of treatment.[7] We disagree.

▆▆ The courts of this state have long recognized that a treating health care practitioner called to testify as to facts observed during his treatment of

---

[5]Appeal lies from the denial of a statutory motion to vacate an appealable judgment or order. (9 Witkin, Cal. Procedure, *op. cit. supra*, Appeal, § 114, pp. 130-132.) Appellant brought his motion to vacate the order denying his motion for a protective order pursuant to section 663. Accordingly, the denial of his motion to vacate is also appealable. Because the legal issues raised by the order denying the motion for protective order and the order denying the motion to vacate that order are identical, we will address those issues without discrete reference to the separate orders.

[6]The parties do not dispute that appellant, as a licensed chiropractor, is a "treating health care practitioner."

[7]At the time of this dispute in 1991, section 2034, subdivision (i)(2) provided in pertinent part: "A party desiring to depose any expert witness, other than a party or employee of a party, who is . . . (B) a treating physician and surgeon or other treating health care practitioner who is to be asked to express an opinion during the deposition . . . shall pay the expert's reasonable and customary hourly or daily fee for the actual time consumed in the

a patient is not entitled to an expert witness fee, absent a contractual agreement to pay such a fee. In *McClenahan* v. *Keyes* (1922) 188 Cal. 574 [206 P. 454], a physician sued to recover fees for his provision of medical treatment as well as his services as a witness at insanity and guardianship hearings. (*Id.* at pp. 575-576.) The court explained, "[t]he uniform rule seems to be that a physician who has acquired knowledge of a patient or of specific facts in connection with the patient may be called upon to testify to those facts without any compensation other than the ordinary witness receives for attendance upon court." (*Id.* at p. 583.)

The rule stated in *McClenahan* was cited with approval in *City & County of S.F.* v. *Superior Court* (1951) 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418], a case in which a defendant in a personal injury lawsuit sought a writ of mandate to compel a physician to answer questions at a deposition regarding his two examinations of the plaintiff. The physician was not hired to treat the plaintiff but rather to advise the plaintiff's attorneys for purposes of the lawsuit. The physician refused to be deposed unless paid an expert witness fee, arguing any questions asked would call for his expert opinion. (37 Cal.2d at pp. 230-231.) The court rejected the physician's position regarding an expert witness fee, explaining the defendant sought to examine the physician ". . . not by reason of his expertness in a special field, but because of his knowledge of specific facts as to [plaintiff's] condition, facts pertinent to an issue to be tried. He is like any other witness with knowledge of such facts; it is immaterial that he discovered them by reason of his special training. In testifying as a witness he would simply be imparting information relevant to the issue, as he would had he been a witness to the accident in which [plaintiff] was injured." (*Id.* at p. 234.) Because the physician never treated the plaintiff, but merely examined him apparently to give his opinion regarding the plaintiff's injuries, diagnosis and prognosis to the plaintiff's attorneys, it is apparent the Supreme Court recognized that a physician's testimony regarding past treatment, diagnoses and prognoses rendered is not expert opinion testimony.

Long after the decision in *City & County of S.F., supra,* the Legislature, in 1968, adopted Government Code former section 68092.5, which provided in pertinent part for payment of an expert witness fee to any person called to testify in court or in the taking of a deposition ". . . solely as to any expert opinion which he holds upon the basis of his special knowledge, skill,

examination of that expert by any party attending the deposition. . . ." (Stats. 1990, ch. 1392, § 2; see Historical and Statutory Notes, 1990 Legislation, 21-22 West's Ann. Code Civ. Proc. (1994 pocket supp.) § 2034 p. 72.) Further references to "section 2034, subdivision (i)(2)" are to the above quoted language.

experience, training or education, and who is qualified as an expert witness . . . ."[8]

In *Bureau of Medical Economics* v. *Cossette* (1974) 44 Cal.App.3d Supp. 1 [118 Cal.Rptr. 242], the court rejected the claims of several doctors, who had treated civil litigants, that they were entitled to expert witness fees because they were subpoenaed for trial or deposition and asked to express their opinions regarding their patients' prognoses. (*Id.* at pp. Supp. 2-3, 5.) The court held, ". . . the insertion of '*solely*' into [Government Code section 68092.5] leads to the inescapable conclusion that in order for the expert to receive compensation for his expertise he must testify *solely* as an expert, unless, of course, there is a prior antecedent agreement for payment. If he is a percipient witness or examines, prescribes and treats the person and is called upon to testify upon these matters and in addition thereto is asked to express his opinion as to prognosis or other subjects upon which he is an expert he is not being called upon to testify *solely* as an expert and therefore cannot be compensated as an expert. He is entitled only to the regular witness fees as any other witness would be." (44 Cal.App.3d at p. Supp. 9.) It is apparent from our reading of the discussion in *Cossette* that the physicians were asked their opinions regarding their patients' prognoses *at the time of deposition*, rather than their past prognoses rendered.

The cited cases demonstrate the distinction between factual and opinion questions posed to treating physicians, a distinction which the trial court in this case more than adequately explained to the parties. Questions regarding the physician's knowledge of specific facts as to the patient's condition, including past treatments provided and past diagnoses and prognoses rendered, are factual questions. Questions regarding the expert's opinion as to the patient's prognosis at the time of the deposition, or regarding the reasons for the treatments, diagnoses, or prognoses provided in the past, call for opinion.

[8]As originally enacted, Government Code section 68092.5 provided in full:

"A person who is not a party to the action and who is required to testify before any court or tribunal, or in the taking of a deposition, in any civil action or proceeding, *solely* as to any expert opinion which he holds upon the basis of his special knowledge, skill, experience, training or education, and who is qualified as an expert witness shall receive reasonable compensation for his entire time required to travel to and from the place where the court or other tribunal, or in the taking of a deposition, the place of taking such deposition, is located and while he is required to remain at such place pursuant to subpoena. The court may fix the compensation for such appearance, in addition to such witness fees otherwise allowed by law, at such amount as seems reasonable to the court, upon motion by any party to the action or by the person required to testify and such fees shall be paid by the party requiring such witness to attend, but such fees shall not be allowable costs or disbursements.

"An express contract entered into between a person and the party requesting or requiring him to testify, relating to compensation, shall be enforceable and shall prevail over the provisions of this section." (Stats. 1968, ch. 1243, § 1, p. 2352, italics added.)

Subsequent to the decision in *Cossette*, the Legislature adopted a new statute to address the right of an expert to an expert witness fee for his testimony at a deposition, i.e., former section 2037.7. (Stats. 1978, ch. 1069, § 1, p. 3287.) In 1980, the Legislature amended the statute to add language, similar to that found in Government Code former section 68092.5, to provide that a witness is entitled to an expert fee when called to testify at a deposition "solely for the purpose of obtaining any expert opinion which the deponent holds upon the basis of his or her special knowledge, skill, experience, training, or education. . . ." (Stats. 1980, ch. 552, § 1, p. 1535.)

Subsequently, the Legislature enacted Statutes 1986, chapter 1336, which brought the statutory language regarding payment of expert witnesses at depositions up to date. As relevant, chapter 1336 repealed former section 2037.7, replacing it with section 2034, subdivision (i)(2), to provide that an expert, or any treating physician or other treating health care practitioner "who is to be asked to express an opinion" at a deposition, is to be paid an expert witness fee. (Stats. 1986, ch. 1336, §§ 2, 3, pp. 4755, 4758.) In 1988, the Legislature similarly amended Government Code section 68092.5, subdivision (a), relevant to testimony before a court, tribunal or arbiter in a civil action. (Stats. 1988, ch. 275, § 1, p. 971.)[9]

"If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*People* v. *Knowles* (1950) 35 Cal.2d 175, 183 [217 P.2d 1].)

In its present incarnation, the statute regarding the payment of expert witnesses at deposition, section 2034, subdivision (i)(2), broadens the circumstances under which a physician or other treating health care practitioner is to be paid an expert witness fee, i.e., the fee must be paid if the witness "is to be asked to express an opinion during the deposition," rather than if the witness is required to testify solely as to any expert opinion. However, the statute does not alter the common law rule that a physician or other treating health care practitioner, who testifies regarding his or her knowledge of the patient's treatment, diagnosis or prognosis, does not express an expert opinion.

Section 2034, subdivision (i)(2) expressly recognizes that a treating physician or health care practitioner may or may not be "asked to express an

---

[9]We note that subsequent to the events at issue here, the Legislature amended section 2034, subdivision (i)(2) to delete the phrase "who is to be asked to express an opinion during the deposition." (Stats. 1992, ch. 1301, § 1.) However, effective less than three months later, the Legislature again amended section 2034, subdivision (i)(2) to reinsert that phrase. (Stats. 1993, ch. 3, §§ 1, 2, eff. Mar. 26, 1993.)

opinion during the deposition." Where a physician or treating health care practitioner is not asked to express an expert opinion during a deposition, he is not entitled to an expert witness fee. Under the plain meaning of the statute, where the deposing attorney asks opinion questions, the physician or health care practitioner becomes entitled to an expert witness fee.[10]

■ Defendant contends section 2034, subdivision (i)(2) is inapplicable because defendant never designated appellant as an expert witness by placing appellant's name on a list of experts. Defendant relies on subdivision (a) of section 2034 which provides in part that "[a]fter the setting of the initial trial date for the action," any party may demand the simultaneous exchange of a list containing information regarding expert trial witnesses. Defendant also relies on subdivision (i), which provides in part that "[o]n receipt of an expert witness list from a party, any other party may take the deposition of any person on the list. The procedures for taking oral and written depositions set forth in Sections 2025, 2026, 2027, and 2028 apply to a deposition of a listed trial expert witness except as follows . . . ." One of the exceptions is subdivision (i)(2) which provides, inter alia, for payment of an expert witness fee to ". . . a treating physician and surgeon or other treating health care practitioner who is to be asked to express an opinion during the deposition . . . ." According to defendant, a physician or other health care practitioner cannot depend on the protection of section 2034 until such time

---

[10]On the issue of the legislative history of section 2034, subdivision (i), appellant directs our attention to selected legislative materials attached to his reply to the opposition to his motion to vacate filed in the superior court. Appellant does not request that we take judicial notice of these materials nor does he indicate that the superior court noticed these materials. (See Evid. Code, § 459.) In any event, the materials support our view that the statute is clear and unambiguous. Notes prepared for the Assembly third reading of Assembly Bill No. 1334, 1985-1986 Regular Session (which was chaptered as Stats. 1986, ch. 1336) indicate on page 2, at paragraph 3(h), "The expert shall be paid the reasonable and customary hourly or daily fee for actual time consumed in the examination at the deposition, including the treating physician *if asked his/her opinion at the deposition.*" (Italics added.)

Appellant also relies on notes prepared for an Assembly Committee on Judiciary meeting scheduled for January 14, 1986, to consider Assembly Bill No. 1409, 1985-1986 Regular Session, which was chaptered as Statutes 1986, chapter 560. This statute amended former section 2037.7, but was effective only from January through June 1987, because of the enactment of Statutes 1986, chapter 1336, sections 3 and 4, page 4758, which repealed section 2037.7 effective July 1, 1987.

The Assembly notes contain the view of an Assembly staff member that a physician who provides medical care by means of the physician's training and expertise is an expert witness. These notes are unpersuasive. Assembly Bill No. 1409 made a minor change to former section 2037.7, which had no effect on the question whether a physician's testimony constitutes expert opinion.

as the patient-litigant places the practitioner's name on a list of expert witnesses.

Nothing in section 2034 suggests an expert witness's right to an expert witness fee does not arise until the expert's name is placed on an expert witness list. If, as appellant contends occurred here, an expert witness is deposed prior to the exchange of expert witness information, it would be inequitable and impractical to preclude the expert from receiving his fee. It is possible to envision situations where one side to a controversy learns the identity of the opposing party's expert prior to the exchange of expert lists, and the opposing party cooperates in discovery by making the expert available for deposition prior to the exchange of lists. Certainly, the expert would be entitled to an expert witness fee.

In this case, the superior court ordered the deposition of appellant at least in part because defendant's counsel represented that he would not ask opinion questions. If defendant's counsel reneged on his promise, it would be inequitable to withhold the expert's fee merely because the expert's name had not yet been placed on a list.

The question remains whether defendant's attorney asked appellant to express an opinion during the deposition. Appellant contends defendant's counsel asked him numerous questions calling for an expert opinion. We have reviewed the questions, which are set out in the footnote.[11]

---

[11]Appellant contends the following questions called for an expert opinion:

"Q: 'Okay. Could you detect any muscle spasm when you felt down there at L5-S1?

"A: I did not indicate any muscle spasm as far as palpation.

"MR. MORGAN [appellant's counsel]: Hey, I want to throw in my objection on that last one. Now the $250 an hour clock has started.'

"Q: 'As a result of the history that you took and the subjective complaints that [plaintiff] told you about, and of your physical examination, did you form an initial working diagnosis of what you thought was wrong with her?

"A: Yes.

"Q: What was it?

"MR. MORGAN: Okay. Now I want to object to this as based on our previous discussion. I'm going to allow him to answer. There's been no expert witness fee paid pursuant to the statute.'

"Q: 'At that time as of July 7th of '88, and if you can separate yourself from this December 1st report, because I'm sure you learned some other things before you wrote that report than you knew on July 7th, but as of July 7th did you have any prognosis for [plaintiff]?

"MR. MORGAN: Same objection as I did before, if you'll agree to it.'

"Q: 'My understanding is—and I don't know if I'm right or wrong—but there's several different ways to manipulate different parts of the body.

"A: There's many, many different ways.'

In our view, only two questions arguably called for an expert opinion.[12] The remainder of the questions inquired as to appellant's observations when he examined or treated plaintiff, and of his diagnoses and prognoses made at different times in the past during his treatment of plaintiff. Construing "opinion" expansively, we shall assume for present purposes that the following two questions called for an opinion: (1) "Did you do that [i.e., X-ray the neck and thoracic spine] to assist you in diagnosing or treating [plaintiff]?"; and (2) "Did you x-ray her at her request, or was that your decision, or did

"Q: 'All right, that's fair enough. Did your diagnosis change as of July 11th of '88 from the previous visit, from the July 7th, 1988 visit?
"A: My diagnosis is listed in my report and it's been the same since I first saw her.
"Q: So it did not change then?
"A: Correct.'
"Q: 'Does that mean you examined and x-rayed both of those areas? Or just that you examined her and then x-rayed both of those areas?
"A: I examined her and it looks like I—let me check the records, but it looks like we x-rayed her on that day, both of those areas. We x-rayed the neck and the thoracic spine.
"Q: Did you do that to assist you in diagnosing or treating her?
"A: Obviously.
"Q: Did you x-ray her at her request, or was that your decision, or did somebody else ask you to do it?
"A: Well, when I see a patient and I think tests need to be done, we'll perform a little examination. I'll discuss with the patient the reason why I feel a certain test should be ordered or performed, and if the patient agrees with me then we'll go ahead and proceed with that test.'
"Q: 'Would it be fair to say that as of December of '88 you agreed that she was on an as-needed type basis and she could come in whenever she was hurting?'
"Q: 'Okay. Let's take those one at a time. [W]hen you did the pinwheel test, could she feel the pinwheel everywhere?'
"Q: 'At that point in time, did you have some estimate of how long she would be off work?
"A: Well, as the Disability states, it's permanently disabled from—I personally listed her as disabled from that job description, so until she finds another job of lesser physical demands, whatever that may be, she's totally and temporarily disabled.'
"Q: 'But in your record, I believe it's of about the 14th or the—I think it's the 14th, she came in telling you that she didn't think she could work much longer. Would that be an indication she told you that she kind of wanted to be taken off work and then you agreed to that?
"A: Well, when a patient is having a lot of trouble I don't like to be the one to ruin them financially. It has to be a mutual decision unless they have something medically that I see that they are going to severely injure them if they do go back to work if you do go back against my recommendations. So in this situation, it was a mutual decision. I did not feel she should be doing the arduous work she was doing.'
"Q: 'I'm asking, did you change your treatment due to her pregnancy, or did you do the same things you were doing before?
"A: Well, there's a lot of modalities that I wouldn't use on a pregnant woman, but I didn't change what I was doing because massage, heat and manipulation wasn't [sic] contraindicated.' "

[12]One other statement made by respondent's counsel would have called for an opinion had it been asked as a question, viz: "My understanding is—and I don't know if I'm right or wrong—but there's several different ways to manipulate different parts of the body[.]" However, counsel did not phrase this as a question, but rather as a statement.

somebody else ask you to do it?" Construing these questions as requiring appellant to explain the reason he conducted his examination in a specific way, we shall assume they called for an opinion.

However, given the circumstances of this case, appellant did not become entitled to an expert witness fee simply because two questions calling for an opinion were asked. Appellant sought and obtained a protective order permitting him to employ counsel at the deposition to advise him regarding which questions called for opinion rather than fact. Appellant did employ counsel during his deposition pursuant to the protective order. Appellant's counsel interposed numerous objections during the deposition as to questions counsel believed called for an opinion. However, appellant's counsel did not object to the two questions which we here assume called for an opinion. Moreover, in the context of a deposition that comprises 92 pages of reporter's transcript, where numerous questions were asked, the 2 opinion questions were de minimis.

## IV

In his cross-appeal, defendant raises the issue whether the trial court erred in denying his several requests for sanctions. Appellant moves to dismiss the cross-appeal.

In response to appellant's motion for a protective order seeking an expert witness fee, defendant moved for sanctions under section 128.5. Because section 128.5 applies solely to parties or their attorneys, the superior court denied the motion for sanctions. Subsequently, appellant moved to vacate the order denying appellant's motion for a protective order, and defendant countered with a motion for sanctions under section 2025, subdivision (i), which provides as relevant: "The court shall impose a monetary sanction under section 2023 against any party, *person*, or attorney who unsuccessfully makes or opposes a motion for a protective order, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (Italics added.)

The superior court expressly found appellant's motion to vacate the order denying a protective order was unmeritorious and brought to harass defendant. Nevertheless, the court denied defendant's motion for sanctions, again on the ground appellant is not a party. But section 2025, subdivision (i), expressly applies to any "person," whether party or not, who makes an

unsuccessful motion for a protective order. Both appellant's motion for a protective order and motion to vacate were unsuccessful motions brought to obtain a protective order. Accordingly, the superior court had jurisdiction to award sanctions against appellant, pursuant to section 2025, subdivision (i), as to both motions. The court's failure to exercise that jurisdiction was error.[13]

Appellant opposes and moves to dismiss defendant's cross-appeal on several grounds. Appellant contends he is not subject to sanctions because he is not a party within the meaning of section 128.5, because express findings for an award of sanctions under section 128.5 were not made, and because an order denying sanctions under section 128.5 is not directly appealable. In opposition to defendant's motion to dismiss, appellant contended he became a party via his motion to vacate. Now, appellant contends he is not a party. Appellant seeks to have it both ways. In any event, we need not determine whether appellant is a "party" within the meaning of section 128.5 because the superior court was authorized to impose sanctions against appellant pursuant to section 2025, subdivision (i).

Appellant additionally opposes the cross-appeal on the ground the superior court was divested of jurisdiction to enter its September 11, 1991, order denying sanctions for appellant's motion to vacate because appellant filed a notice of appeal from the order denying the motion to vacate on September 6, 1991. We need not reach this issue. We will assume the superior court lacked jurisdiction to enter its September 11 order. Because the matter must be remanded for the superior court to reconsider, pursuant to section 2025, subdivision (i), its order denying sanctions entered July 10, 1991, the court will have renewed jurisdiction to consider the motion for sanctions which the court purported to deny by its order entered September 11, 1991.

V

The judgment (order) is reversed to the extent it denies defendant's motions for sanctions, by orders dated July 10, 1991, and September 11, 1991. In all other respects, the judgment (order) is affirmed. The cause is

---

[13]We do not address the merits of the superior court's order denying defendant's motion for sanctions dated April 23, 1991. Defendant's motion sought sanctions based on defendant's motion for an order compelling appellant to answer questions at a deposition. Both the motion to compel answers to deposition questions and the motion for sanctions served the purpose of compelling evidence and, therefore, the orders on those motions are not directly appealable. (*Southern Pacific Co.* v. *Oppenheimer, supra,* 54 Cal.2d 784, 786.)

remanded for further proceedings in accordance with the views expressed herein. Defendant is to recover costs on appeal.

Scotland, J., and Nicholson, J., concurred.

The petition of appellant Michael D. Hanley for review by the Supreme Court was denied November 3, 1994.