[No. S049103. May 27, 1999.]

TEMPLE COMMUNITY HOSPITAL, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SANDRA RAMOS, Real Party in Interest.

**COUNSEL**

O'Flaherty & Belgum, O'Flaherty, Cross, Martinez, Ovando & Hatton and Robert M. Dato for Petitioner.

Musick, Peeler & Garrett, R. Joseph De Briyn; Ginsburg, Stephan, Oringher & Richman, Harry W. R. Chamberlain II; and Marcus M. Kaufman for American Insurance Association as Amicus Curiae on behalf of Petitioner.

Horvitz & Levy, David S. Ettinger and Julie L. Woods for California Medical Association, California Healthcare Association and California Dental Association as Amici Curiae on behalf of Petitioner.

Paul N. Halvonik; and Fred J. Hiestand for the Association for California Tort Reform as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Mazursky, Schwartz & Angelo, Christopher E. Angelo and Anthony Kornarens for Real Party in Interest.

Ian Herzog; Douglas DeVries; Leonard Sacks; Bruce Broillet; Harvey Levine; Roland Wrinkle; Steven Kleifield; David A. Rosen; Tony Tanke; Mary E. Alexander; David Casey; Robert Steinberg; William Turley and Associates, William Turley and Deborah A. Walker for Consumer Attorneys of California as Amicus Curiae on behalf of Real Party in Interest.

## OPINION

**GEORGE, C. J.**—In *Cedars-Sinai Medical Center* v. *Superior Court* (1998) 18 Cal.4th 1 [74 Cal.Rptr.2d 248, 954 P.2d 511] (*Cedars-Sinai*), we concluded that no tort cause of action will lie against a party to litigation for the intentional destruction or suppression of evidence when the spoliation was or should have been discovered before the conclusion of the litigation. This case presents a related issue not resolved in *Cedars-Sinai*, namely whether a tort cause of action will lie against a person who is not a party in a lawsuit but who intentionally destroys or suppresses evidence that would be relevant in the lawsuit.

As we shall explain, many of the considerations that led us in *Cedars-Sinai* to decline to recognize a tort cause of action for spoliation apply with equal weight when the spoliation is committed by a third party. The doubtful benefit of the proposed tort remedy is outweighed by the prospect of a spiral of litigation giving rise to verdicts based upon speculation. In addition, it would be anomalous for a nonparty to be liable in damages, including punitive damages, for conduct that would not give rise to tort liability if committed by a party. We conclude that no tort cause of action will lie for intentional third party spoliation of evidence.

I

The present lawsuit arose out of surgery performed on January 16, 1995, on plaintiff Sandra Ramos at Temple Community Hospital (Hospital) in Los Angeles. Anesthesiologist K. Jackson placed Ramos under general anesthesia, and surgeon Jamshid Nazarian applied an electrocautery tool to Ramos's right eyebrow. In her complaint in the underlying action, plaintiff alleges that the electrocautery tool caused oxygen used in the anesthesia to ignite, causing a fire that severely burned her face. She also alleges that Dr.

Nazarian's records indicate that the electrocautery tool "failed" when a flame emerged from it, and that the flame ignited the oxygen.

Ramos alleges that her counsel made various efforts, beginning on January 23, 1995, to ensure the preservation of evidence. Specifically, she alleges that counsel requested that Hospital and the physicians retain the cautery instrument and "any other evidence that is relevant to causing this severe facial injury," and further alleges that counsel requested permission to inspect that evidence and certain documentary evidence. Defendants, it is alleged, refused to permit inspection of the equipment used in the surgery.

In May 1995, Ramos filed a complaint in the Los Angeles County Superior Court, alleging tort causes of action against Hospital, the two physicians, and various manufacturers and distributors of medical equipment, as well as entities responsible for inspection and maintenance of medical equipment. Plaintiff alleged four causes of action against Hospital, which included professional malpractice, intentional and negligent spoliation of evidence, and general negligence. She also named her treating physicians in the first three of these causes of action. The remaining causes of action alleged various product liability, breach of warranty, and negligence claims against a number of other defendants. These claims involved the design and maintenance of medical equipment used in plaintiff's care. In particular, plaintiff alleged a product liability cause of action against Valleylab, Inc., the manufacturer of the electrosurgical device used in plaintiff's surgery. The trial court subsequently granted summary judgment in favor of Valleylab because there was no evidence the electrosurgical device was defective, and because Valleylab had provided adequate warnings regarding the use of the device.[1]

Plaintiff alleges in the cause of action for intentional spoliation that Hospital knew of the existence of evidence such as the oxygen tank and mask, and the electrocautery tool used in the surgery, as well as related written records, knew that these items might constitute relevant evidence in potential litigation, knew of plaintiff's potential products liability claims, and knew that Hospital was engaging in acts likely to cause the loss or concealment of such evidence. Plaintiff also alleges that Hospital caused the loss or concealment of this potential evidence by failing to provide plaintiff with timely access to this evidence, despite numerous requests by counsel, and that Hospital disposed of the oxygen tank that was the source of the

---

[1]We grant plaintiff's request for judicial notice to the extent it requests that we take notice of the trial court's order granting Valleylab's motion for summary judgment. (Evid. Code, § 452, subd. (d).) In all other respects, the parties' requests for judicial notice are denied because the material submitted for our notice is irrelevant.

explosion. Plaintiff alleged that this conduct "caused the Plaintiff to sustain damage, namely that Plaintiff's opportunity to discover and then prove her entitlement to compensation for injuries sustained as a result of the Accident was substantially interfered with. Because of this lost opportunity, Plaintiff has been deprived of the opportunity to establish her right in a judicial forum to receive reimbursement from the Defendants for such injuries." Plaintiff sought compensatory and punitive damages in connection with this cause of action.

Defendant Hospital moved to strike portions of the complaint as irrelevant, particularly the references to plaintiff's alleged attempts to obtain informal discovery before the filing of the complaint. Defendant Hospital also moved to strike plaintiff's prayer for punitive damages in connection with the cause of action for intentional spoliation, because of plaintiff's failure to comply with the requirements of Code of Civil Procedure section 425.13, subdivision (a) (hereafter section 425.13(a)), which provides that in medical malpractice actions, no claim for punitive damages shall be included in a complaint unless the court has determined there is a substantial probability the plaintiff will prevail on the claim.

Plaintiff opposed the motion, contending that her second cause of action for intentional spoliation of evidence was not subject to section 425.13(a), that there was no basis for striking other allegations contained in the complaint, and that her allegations were sufficient to state a claim for punitive damages in connection with the alleged intentional spoliation.

On September 5, 1995, the trial court denied Hospital's motion to strike, concluding the alleged spoliation of evidence did not occur while Hospital was rendering professional medical services to plaintiff, thus rendering section 425.13(a) inapplicable.

On September 21, 1995, Hospital filed a petition for writ of mandate in the Court of Appeal, contending that the trial court had erred in determining that section 425.13(a) did not apply to plaintiff's claim for punitive damages in connection with the cause of action alleging intentional spoliation of evidence. Hospital sought a writ of mandate to compel respondent court to vacate its order denying Hospital's motion to strike and to enter a new order granting the motion. The Court of Appeal summarily denied the petition. Hospital petitioned this court for review of the order denying writ relief, and we granted review, transferring the matter to the Court of Appeal with directions to vacate its order and issue an alternative writ to be heard before that court.

Having issued the alternative writ, the Court of Appeal denied the petition for writ of mandate, concluding that section 425.13(a) does not apply to the

intentional spoliation of evidence alleged in the complaint. Thereafter, we granted Hospital's petition for review to decide whether a tort cause of action should lie for intentional spoliation of evidence, and—in the event such a tort action lies—whether section 425.13(a) applies to plaintiff's cause of action against Hospital for intentional spoliation of evidence.

We observe that plaintiff's spoliation claim is a hybrid. She alleges that Hospital caused the loss of evidence relevant to all her claims—those against Hospital as well as those, for example, against Valleylab, Inc. To the extent plaintiff's spoliation claim is based upon the allegation that Hospital intentionally destroyed or suppressed evidence relevant to plaintiff's claims against Hospital, her claim is barred by our recent decision in *Cedars-Sinai*, and despite plaintiff's disagreement with the holding in that recent case, we conclude there is no reason to reconsider it at this time. Assuming the remainder of the claim properly may be characterized as a third party spoliation claim because it involves spoliation of evidence relevant to plaintiff's causes of action against the other defendants, we consider whether third party spoliation may give rise to a cause of action in tort.[2]

## II

In order to determine whether a tort cause of action for intentional spoliation of evidence by a third party should be recognized, we consider first our recent decision in *Cedars-Sinai*, *supra*, 18 Cal.4th 1. In that case, although we emphasized that intentional spoliation of evidence is a "grave affront to the cause of justice and deserves our unqualified condemnation" (*id.* at p. 4), we declined to recognize a remedy in tort when the alleged intentional spoliation is committed by a party to the underlying litigation and the spoliation has or reasonably should have been discovered before the conclusion of the litigation. (*Ibid.*)

In *Cedars-Sinai*, *supra*, 18 Cal.4th 1, we weighed the benefit of recognizing the spoliation cause of action against the burdens and costs it would impose. First, we explained that to recognize the tort would contravene the long-standing policy of this court to limit collateral or ancillary tort claims arising out of litigation-related misconduct. (*Id.* at pp. 8-11.) We emphasized that sanctions within the original proceeding, as well as disciplinary and penal sanctions, and resort to the legislative process, are preferable to derivative litigation. (*Id.* at pp. 9, 11-13.) Furthermore, our discussion

---

[2]As in *Cedars-Sinai*, *supra*, 18 Cal.4th 1, we decide the issue despite the circumstance that below, the parties assumed that California tort law recognized the existence of a cause of action in tort for intentional spoliation of evidence. (*Id.*, at pp. 6-7, and fn. 2.) The issue is one of public importance, is presented by the case before us, and has been fully argued in this court.

recognized that even when sanctions within the lawsuit are not available, a tort remedy may be rejected on the ground that such a remedy would produce endless derivative litigation. For example, we pointed out that when perjury occurs in the course of the lawsuit, "creating a false picture of the evidence before the trier of fact" and "undermin[ing] the search for truth and fairness," no civil action in tort will lie even if at trial the litigant is " 'overborne by perjured testimony.' " (*Id.* at pp. 9, 11.) Similarly, we noted that no tort action is recognized for the "concealment or withholding of evidence." (*Id.* at p. 10.)

In the case of intentional spoliation of evidence by a party, we observed in *Cedars-Sinai* that a tort remedy appeared of limited utility in view of the nontort remedies that may compensate injured parties and punish and deter a party to litigation who indulges in such misconduct. First among these remedies is the evidentiary inference permitted by Evidence Code section 413, which permits the trier of fact to infer that evidence suppressed by a party was unfavorable to the party. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 11-12.) We also pointed to discovery sanctions prescribed by Code of Civil Procedure section 2023, disciplinary sanctions against attorneys guilty of spoliating evidence or of participating in the suppression of evidence, and the criminal sanction for spoliation of evidence provided by Penal Code section 135. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 12-13.)

Next, we observed in *Cedars-Sinai* that "[i]t seems likely that in a substantial proportion of spoliation cases the fact of harm will be irreducibly uncertain." (*Cedars-Sinai, supra*, 18 Cal.4th at p. 13.) In these cases, "there will typically be no way of telling what precisely the evidence would have shown and how much it would have weighed in the spoliation victim's favor." (*Id.* at p. 14.) The elements of causation and damages, therefore, in the continuing absence of the spoliated evidence, would be nearly impossible to prove, and permitting a cause of action that necessarily would be based upon speculation and conjecture could burden the courts with claims that may be peculiarly productive of arbitrary and unreliable verdicts. (*Id.* at pp. 14-16.)

In addition, we pointed out that imposition of liability—including punitive damages—could cause significant burdens disproportionate to the merit of a particular claim or to the effectiveness of the tort remedy as a deterrent. Meritless claims easily could be brought, and the threat of liability might cause individuals and entities to engage in unnecessary and expensive record-retention policies. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 15-16.) Finally, we pointed out that if the spoliation claim were tried concurrently with the underlying litigation, there would be "a significant potential for jury

confusion and inconsistency," whereas if the spoliation claim were brought after the conclusion of the underlying litigation, the result would be "duplicative proceedings" involving a " 'retrial within a trial' " and carrying the potential for inconsistent results. (*Cedars-Sinai, supra,* 18 Cal.4th at p. 16.)

In *Cedars-Sinai* we did not consider whether a tort remedy should be available for intentional spoliation of evidence by third parties. Many of the considerations that influenced us in *Cedars-Sinai,* however, guide us to conclude that no tort remedy should be available in such circumstances.[3]

We consistently have cautioned against expanding tort liability to include litigation-related misconduct other than malicious prosecution. (*Rubin* v. *Green* (1993) 4 Cal.4th 1187, 1199 [17 Cal.Rptr.2d 828, 847 P.2d 1044]; *Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 213-214 [266 Cal.Rptr. 638, 786 P.2d 365].) Our decisions have stressed the importance of encouraging parties to make their best effort to investigate and litigate their claims in a single proceeding, and have observed that "[t]o allow a litigant to attack the integrity of evidence after the proceedings have concluded, except in the most narrowly circumscribed situations, such as extrinsic fraud, would impermissibly burden, if not inundate our justice system." (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 214.) Regulatory, criminal, and disciplinary sanctions, as well as legislative measures and sanctions available to litigants within the scope of the original lawsuit, frequently are of more utility than tort litigation in accomplishing the goals of deterring and punishing litigation-related misconduct. (See *Rubin* v. *Green, supra,* 4 Cal.4th at pp. 1198-1199; *Silberg* v. *Anderson, supra,* 50 Cal.3d at pp. 218-219; *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 873-874 [254 Cal.Rptr. 336, 765 P.2d 498].)

As in the case of spoliation of evidence by a party, addressed in *Cedars-Sinai,* a cause of action for third party spoliation of evidence would constitute derivative litigation in which a party to the original lawsuit asserts that litigation-related misconduct affected the accuracy or reliability of the first judgment. The goal of having disputes resolved in a single proceeding whose outcome is final as to *both* of the parties would be undermined if a party who was disappointed in a verdict were permitted to bring a new lawsuit against a new party, claiming that the first lawsuit would have been won but for the new party's destruction or suppression of evidence.

---

[3]As in *Cedars-Sinai, supra,* 18 Cal.4th 1, we are not called upon to determine whether a tort cause of action will lie for negligent spoliation of evidence, so there is no need to discuss recent cases cited by the parties discussing such a tort claim. (See *Johnson* v. *United Services Automobile Assn.* (1998) 67 Cal.App.4th 626 [79 Cal.Rptr.2d 234] [negligent spoliation of evidence]; see also *Galanek* v. *Wismar* (1999) 68 Cal.App.4th 1417 [81 Cal.Rptr.2d 236] [legal malpractice claim based upon negligent spoliation of evidence].)

It is not the finality of the underlying judgment itself that is threatened, either in the case of spoliation by a party or in the case of third party spoliation. The judgment in the underlying suit would not be vacated or overturned as a result of a subsequent tort claim for spoliation, whether committed by a party or by another, and in both instances the alleged wrong is the spoliation—which is not necessarily addressed in the underlying litigation. Yet in *Cedars-Sinai*, we pointed with disapproval to the endless round of litigation, derivative to the first lawsuit, that would be provoked by recognition of the spoliation tort (*Cedars-Sinai*, *supra*, 18 Cal.4th at pp. 9-11), and recognized a need for "finality of adjudication." (*Id.* at p. 10.) The same concern applies to third party spoliation. We are reluctant to provide disappointed litigants a second opportunity to seek the compensation they sought in the original lawsuit, even if they seek it against a party not involved in the original lawsuit. We also are reluctant to require courts to provide a forum for parties who seek to avoid the *effect* of a prior judgment by asserting that a collateral wrong improperly affected the verdict. The spoliation tort not only would provide the disappointed litigant a second opportunity to seek compensation, it would require retrial of the first case in order to permit the plaintiff to demonstrate in what respect the alleged spoliation altered the outcome of the first trial. Indeed, the matter might still continue, for spoliation in the second trial might give rise to yet a third lawsuit.

Although these considerations apply primarily to actions brought after the conclusion of the underlying litigation, different problems occur in the event the spoliation claim were to be tried concurrently with the underlying litigation. Such a claim would have to be alleged, as in the present case, before discovery had disclosed whether the allegedly spoliated evidence actually had been destroyed or whether its loss is significant. These circumstances would lead to the bringing of premature and meritless claims—a situation that in turn might lead to later derivative claims of malicious prosecution. Further, as we pointed out in *Cedars-Sinai*, concurrent litigation of the claims would give rise to a "significant potential for jury confusion and inconsistency." (*Cedars-Sinai*, *supra*, 18 Cal.4th at p. 16.)

Our desire to avoid derivative litigation is not limited to that premised upon misconduct allegedly committed by a party to litigation. As we recognized in *Cedars-Sinai*, perjury by a witness, though it distorts the factfinding process and unfairly may deprive a litigant of compensation for wrong, is not actionable in tort. (*Cedars-Sinai*, *supra*, 18 Cal.4th at p. 9; *Taylor* v. *Bidwell* (1884) 65 Cal. 489, 490 [4 P. 491].) Similarly, a tort claim will not lie for the concealment or withholding of evidence. (*Cedars-Sinai*, *supra*, 18 Cal.4th at p. 10.) As we stated: " '[W]e think it is settled beyond controversy

that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony.' " (*Id.* at pp. 10-11.) When a party is unable to expose perjury at trial " 'he is without remedy. The wrong, in such case, is of course a most grievous one, and no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied. *Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice.' " (*Id.* at p. 11, italics added.)

Third party spoliation of evidence is analogous to perjury by a witness, and the same endless spiral of lawsuits over litigation-related misconduct could ensue were we to recognize a tort cause of action for third party spoliation. As in the case of spoliation by a party, one party unfortunately may be deprived of critical evidence and of a defense, or remain uncompensated for an injury. This potential injustice cannot be avoided, however, if we are to escape what we have identified as the greater harm of subjecting parties, witnesses, and the courts to unending litigation over the conduct and outcome of a lawsuit.

We acknowledge that perjury and spoliation are distinguishable in the sense that if perjury is discovered before or during trial, it may be possible to expose the falsehood through cross-examination, whereas the absence of evidence that has been suppressed by a nonparty sometimes may foreclose a claim altogether. Nonetheless, our desire—for the benefit of litigants, witnesses, and the courts—to avoid endless litigation makes us reluctant to permit a party who is disappointed in the verdict in one case to have a second opportunity to obtain compensation or other relief from a new defendant whose spoliation of evidence assertedly brought about the disappointing verdict on the underlying claim. As noted, to the extent it is asserted that spoliation could be litigated and compensated in one unitary action, the same potential for meritless claims and confusion of the jury exists in third party spoliation situations as we recognized in *Cedars-Sinai* in the case of spoliation by a party.

In addition, to the extent that a real problem of intentional spoliation by third parties exists, it often will be the case that such spoliation *will* be exposed in the trial of the underlying action. First, in many instances the third party spoliator actually may not be a total stranger to the litigation, for little motivation for intentional spoliation exists when the third party is wholly divorced from the litigation. As in the present case, defendant's action as a *first party* spoliator may be subject to exposure at trial and may affect the verdict so that the plaintiff will obtain the compensation to which

he or she is entitled. Second, if the third party spoliator is acting at the behest of a party, a negative inference may be drawn against that party (see, e.g., *People* v. *Williams* (1997) 16 Cal.4th 153, 200-201 [66 Cal.Rptr.2d 123, 940 P.2d 710]; *People* v. *Kendall* (1952) 111 Cal.App.2d 204, 213 [244 P.2d 418]; see also *Nally* v. *Volkswagen of America, Inc.* (1989) 405 Mass. 191 [539 N.E.2d 1017, 1021] [excluding testimony of expert who lost or destroyed evidence]; Katz & Muscaro, *Spoilage of Evidence—Crimes, Sanctions, Inferences, and Torts* (1993) 29 Tort & Ins. Law J. 51, 57-58), and the full panoply of discovery sanctions may apply against the party under certain circumstances. (Code Civ. Proc., § 2025, subds. (j)(3), (o).) Finally, although a plaintiff could not rely upon the evidentiary inference permitted by Evidence Code section 413 to prove his or her case when spoliation is committed by a nonparty acting independently, such a plaintiff could bring before the jury the fact that relevant evidence intentionally was destroyed by another, in order to rebut any contention that the *plaintiff's* failure to produce the evidence would support an inference that the evidence was adverse to plaintiff's cause. (See Evid. Code, § 412 ["If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust."].)

Another consideration that weighed heavily in *Cedars-Sinai*—the uncertainty of the fact of harm arising from spoliation—is equally applicable in third party spoliation. As in the case of spoliation of evidence by a party, in the case of third party spoliation "[i]t seems likely that in a substantial proportion of spoliation cases the fact of harm will be irreducibly uncertain. In such cases, even if the jury infers from the act of spoliation that the spoliated evidence was somehow unfavorable [to a party], there will typically be no way of telling what precisely the evidence would have shown and how much it would have weighed in the spoliation victim's favor. Without knowing the content and weight of the spoliated evidence, it would be impossible for the jury to meaningfully assess what role the missing evidence would have played in the determination of the underlying action. The jury could only speculate as to what the nature of the spoliated evidence was and what effect it might have had on the outcome of the underlying litigation." (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 13-14.)

Not only the fact of injury, but also the element of causation would be an intractable element of proof. Assuming injury, the extent to which the destruction of evidence caused a different result in the underlying litigation frequently would be a matter of speculation, given the discretion vested in the court and the jury. (See *Federated Mut.* v. *Litchfield Prec. Comp.* (Minn. 1990) 456 N.W.2d 434, 438.) In addition, it may be difficult to identify

whether the spoliation caused damage to the defendant or to the plaintiff in the underlying litigation. When the spoliator is not acting at the behest of a party, both parties in the underlying litigation may be victimized by the destruction of evidence, and in the absence of the evidence it is difficult to determine which party has been affected more adversely. We are reluctant to have courts provide compensation when it is so difficult to determine who has suffered the loss.

Moreover, as noted, the same potential for jury confusion and for inconsistency would ensue if third party claims were litigated simultaneously with the original litigation, and in a separate action there would be the same "duplicative proceedings without avoiding the potential for inconsistent results. The spoliation action would require a 'retrial within a retrial,' for all of the evidence in the underlying action would have to be presented again so that the spoliation jury could determine what effect the spoliated evidence would have had in light of all the other evidence." (*Cedars-Sinai, supra,* 18 Cal.4th at p. 16.)

We observe that when our lower courts originally—and mistakenly—recognized a cause of action for intentional spoliation of evidence by a party to litigation, they did so in large part because they considered the cause of action to be analogous to the tort of intentional interference with prospective economic advantage. (See *Smith* v. *Superior Court* (1984) 151 Cal.App.3d 491, 501 [198 Cal.Rptr. 829], disapproved in *Cedars-Sinai, supra,* 18 Cal.4th at p. 18, fn. 4.) The potential verdict was considered to be a probable future economic benefit, and equally deserving of protection from interference as the probable expectancy protected by the tort of intentional interference. We note that, as in the present case, the defendant in an alleged case of interference with prospective economic advantage is a third party to the business relationship that he or she disrupts. Nonetheless, "[w]e have been cautious in defining the interference torts [interference with contract and interference with prospective economic advantage], *to avoid promoting speculative claims.* Thus . . . we refused to recognize the cause of action in the sporting context [and we] also refused to extend the tort to protect expectancies beyond those involved in ordinary commercial dealings—a person's expectancy in the outcome of a government licensing proceeding is not protected against outside interference. [Citation.]" (*Pacific Gas & Electric Co.* v. *Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1136-1137 [270 Cal.Rptr. 1, 791 P.2d 587], italics added.) As we have seen, the injury in the case of spoliation *is* speculative. A litigant's expectancy in the outcome of litigation is peculiarly uncertain, being subject to the discretion of court and jury. Whether interference with the prospective advantage of prevailing in a lawsuit is committed by a party to the litigation or instead by a stranger to

the litigation, the claimed fact of damage—loss or impairment of a hoped-for civil verdict—is equally speculative.

In addition, the burdens and costs of recognizing a tort remedy for third party spoliation are considerable—perhaps even greater than in the case of first party spoliation. The same burdens identified in *Cedars-Sinai* exist, namely, jury confusion and the potential for abuse in bringing the action and for inaccurate and arbitrary verdicts, magnified by the potential for punitive damages (see *Cedars-Sinai, supra,* 18 Cal.4th at p. 15), as well as the obvious burden to the judicial system, litigants, and witnesses, inherent in derivative litigation. Beyond these burdens, in the case of third party spoliation additional burdens arise from the circumstance that the class of potential plaintiffs and defendants is greatly expanded. As noted, *both* parties in the underlying litigation may be injured by a third party's single act of destruction of evidence, thereby giving rise to two claims with potentially inconsistent or duplicative verdicts. In the products liability situation, for example, a manufacturer held partially liable for the plaintiff's injury may claim injury arising from spoliation, while the plaintiff in the underlying litigation may claim that but for the spoliation, his or her recovery would have been greater. In addition, although spoliation claims between parties have an inherently limited number of potential *defendants,* if spoliation by nonparties were actionable in tort, the cast of potential defendants would be much larger. We believe the broad threat of potential liability, including that for punitive damages, might well cause numerous persons and enterprises to undertake wasteful and unnecessary record and evidence retention practices. Medical providers, for example, might feel constrained to retain contaminated surgical devices and byproducts of medical procedures out of fear of liability.

We recognize that the salient distinction between first party and third party spoliation of evidence is the disparity in sanctions available within the confines of the underlying litigation. In the case of first party spoliation, these sanctions serve not only to deter spoliation of evidence, but may promote compensation for the underlying injury in spite of the absence of the spoliated evidence. The evidentiary inference permitted by Evidence Code section 413 in the case of willful suppression of evidence by a party, as well as most discovery sanctions, ranging from issue preclusion to dismissal, are not available when a person who is not a party to the litigation and who is not an agent of a party intentionally has destroyed evidence.

The victim of third party spoliation, however, is not entirely helpless. Some discovery sanctions are available to punish third party spoliation, including monetary and contempt sanctions against persons who flout the

discovery process by suppressing or destroying evidence. (See Code Civ. Proc. §§ 2020, subd. (h), 2023, subd. (b)(1),(5), 2025, subds. (j)(3), (o); see *Brun* v. *Bailey* (1994) 27 Cal.App.4th 641, 658-659 [32 Cal.Rptr.2d 624] [reference to "any person" in statute imposing discovery sanctions permits sanctions against nonparty].) A criminal sanction remains available under Penal Code section 135, as are disciplinary sanctions against attorneys who may be involved in spoliation. As we have pointed out, the victim of third party spoliation may deflect the impact of the spoliation on his or her case by demonstrating why the spoliated evidence is missing. (See Evid. Code § 412.) It also may be possible to establish a connection between the spoliator and a party to the litigation sufficient to invoke the sanctions applicable to spoliation by a party. (Code Civ. Proc. § 2025, subds. (j)(3), (o).)

We do not believe that the distinction between the sanctions available to victims of first party and third party spoliation should lead us to employ the burdensome and inaccurate instrument of derivative tort litigation in the case of third party spoliation. We observe that to the extent a duty to preserve evidence is imposed by statute or regulation upon the third party, the Legislature or the regulatory body that has imposed this duty generally will possess the authority to devise an effective sanction for violations of that duty. To the extent third parties may have a contractual obligation to preserve evidence, contract remedies, including agreed-upon liquidated damages, may be available for breach of the contractual duty. Criminal sanctions, of course, also remain available.

If existing remedies appear limited, that may well be because third party spoliation has not appeared to be a significant problem in our courts. After all, the nonparty who is not acting on behalf of a party but is independently motivated to destroy evidence with the intent to interfere in the outcome of litigation between other parties must be a rarity, perhaps because such destruction can subject the nonparty to criminal prosecution.

Finally, our conclusion that recognition of a tort cause of action for intentional third party spoliation would be unwarranted is strengthened by the realization how anomalous it would be to impose such liability— including potential punitive damages—upon those spoliators who are third parties to litigation, when we have concluded in *Cedars-Sinai* that tort liability for spoliation should not be imposed upon litigants who engaged in such behavior to obtain an advantage in their own litigation. In the present case, for example, it would be a strange outcome indeed to hold that Hospital may not be held liable as a defendant in a tort action for destroying evidence relevant to plaintiff's medical malpractice claim against Hospital,

but that it might be liable in punitive damages as a third party for the same act of destruction, because the evidence in question also was relevant to plaintiff's separate products liability claim against the manufacturer of the equipment.

In sum, we conclude that the benefits of recognizing a tort cause of action, in order to deter third party spoliation of evidence and compensate victims of such misconduct, are outweighed by the burden to litigants, witnesses, and the judicial system that would be imposed by potentially endless litigation over a speculative loss, and by the cost to society of promoting onerous record and evidence retention policies.[4]

Plaintiff contends that her constitutional right of free access to the courts bars private persons from destroying objects of potential relevance to a lawsuit, and requires that we recognize a spoliation cause of action against nonparties as well as parties to the litigation. Plaintiff cites cases discussing a litigant's right of access to the courts, but these opinions do not suggest that recognition of this right requires that private persons be barred from disposing of objects that may prove to be relevant in a lawsuit, nor that this right includes a constitutional right to hold the offending private party accountable under common law tort principles for its destruction of evidence. We are unaware of any authority investing parties to litigation with a constitutional right to sue other private persons in a common law tort action for interference with the party's ability to prevail in a lawsuit. (See, e.g., *Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 125-126 [216 P.2d 825, 13 A.L.R.2d 252].)[5]

### III

We reverse the judgment of the Court of Appeal denying the petition for writ of mandate and remand the cause to the Court of Appeal for further proceedings consistent with this opinion.

Baxter, J., Chin, J., and Brown, J., concurred.

**BAXTER, J.**—I concur fully in the majority's conclusion that there is no tort cause of action for intentional "third party" spoliation of evidence, and I

---

[4]Of course, in light of our conclusion that a cause of action for intentional spoliation of evidence by a third party does not exist, no punitive damages claim will lie with respect to the second cause of action alleged in plaintiff's complaint, regardless whether she complied with section 425.13(a). Accordingly, we do not consider the contentions of the parties with respect to the applicability of that statute to the present case.

[5]Plaintiff's reference to a potential violation of 42 United States Code section 1985(2) is misplaced because plaintiff, in her complaint, made no attempt to allege a violation of that provision.

have signed the majority opinion. I withheld my signature and approval from the majority's related opinion in *Cedars-Sinai Medical Center* v. *Superior Court* (1998) 18 Cal.4th 1 [74 Cal.Rptr.2d 248, 954 P.2d 511] (*Cedars-Sinai*), even though I was similarly sympathetic to the substantive views expressed there.

As my concurring opinion in *Cedars-Sinai* made clear, my refusal to sign the majority opinion in that case was based on procedural considerations. Similar procedural concerns are present here. I therefore write separately to explain why I have taken a different action here than there.

In an opinion signed by six members of the court, *Cedars-Sinai* declined to recognize a tort cause of action for intentional "first party" spoliation of evidence. The majority reached the foregoing issue even though it was raised for the first time in the petition for review, and even though the only question litigated and decided in the lower courts was whether a punitive damages claim could be stated under Code of Civil Procedure section 425.13, subdivision (a) (section 425.13(a)).[1]

Writing separately in *Cedars-Sinai*, I indicated that I did not necessarily disagree with the majority insofar as it declined to recognize the proposed tort on the ground its disadvantages far outweighed any benefits. However, I concluded that I could not vote on the substantive question addressed by my colleagues in that case because it was not "properly before the court." (18 Cal.4th 1, 18 (conc. opn. of Baxter, J.).) I was concerned, among other things, that by exercising its discretion to decide an issue not previously raised in the case, this court might mistakenly be seen as excusing litigants in future cases "from compliance with applicable procedural rules" dictating a contrary result. (*Id.* at p. 21 (conc. opn. of Baxter, J.).) Such threshold objections were considered—and rejected—in *Cedars-Sinai* for reasons set forth in the majority opinion. (*Id.* at pp. 5-7.)

Here, the question whether to recognize intentional third party spoliation is presented under procedural circumstances similar to those at issue in *Cedars-Sinai, supra*, 18 Cal.4th 1. Specifically, lower court proceedings

---

[1] Code of Civil Procedure section 425.13(a) states in pertinent part, "In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code." All further unlabeled statutory references are to the Code of Civil Procedure.

focused on whether the requirements for pleading a punitive damages claim against defendant, a health care provider, had been met under section 425.13(a). Although the viability of a spoliation tort was not seriously litigated by the parties until they filed briefs in this court, the majority chooses to address the question for reasons similar to those used to overcome my procedural objections in *Cedars-Sinai, supra,* 18 Cal.4th 1, 5-7. (Maj. opn., *ante,* at p. 469, fn. 2.)[2]

On the one hand, nothing in the present case leads me to reconsider or disavow the views expressed in my concurring opinion in *Cedars-Sinai.* I continue to believe that this court should generally avoid "reaching out" to decide questions not raised or resolved in the lower courts. (18 Cal.4th 1, 20 (conc. opn. of Baxter, J.).)

On the other hand, I recognize that this argument was rejected by a majority of the court in *Cedars-Sinai* for reasons which, if persuasive there, apply with equal force here. To withhold my vote on the merits in the present case would thus serve little purpose. Indeed, to formally adhere to the procedural stance I took in *Cedars-Sinai* would prevent me, once again, from participating in a significant legal question which all of my colleagues are determined to decide, and which the majority resolves in a particularly compelling fashion.

For the foregoing reasons, I have signed the attached majority opinion.

**KENNARD, J.,** Dissenting.—During surgery, a young woman is severely burned when a medical device ignites flammable gases that have collected under the surgical drapes. Alleging that a defect in the medical device caused the accident, she sues the device's manufacturer to obtain compensation for her injuries, but someone other than the manufacturer destroys the device. Without the device, she cannot prove that it was defective, and the trial court grants summary judgment for the manufacturer. If the device was intentionally destroyed to prevent the young woman from winning her lawsuit against the manufacturer, does she have any recourse against the person who purposely sabotaged her lawsuit by destroying the medical device? The majority says she has no remedy and her injuries must remain uncompensated.

I disagree. I would recognize a narrowly drawn tort remedy for the intentional destruction of evidence by someone *not* a party to the underlying

---

[2]I note that defendant suggested in the Court of Appeal that if section 425.13(a) did not apply to the punitive damages claim appended to plaintiff's cause of action for intentional spoliation, then "it is time to reexamine the 'tort' of spoliation." This passing reference appeared in the reply brief filed in support of defendant's petition for a writ of mandate, and was not addressed by the Court of Appeal in the opinion currently under review.

cause of action to which the evidence is relevant, when the evidence is destroyed with the intent of affecting the outcome of the underlying action.

## I

At issue here is only plaintiff's cause of action for intentional *third party* spoliation, that is, the intentional destruction or suppression of evidence by someone not a party to the underlying cause of action to which the evidence is relevant. In *Cedars-Sinai Medical Center* v. *Superior Court* (1998) 18 Cal.4th 1 [74 Cal.Rptr.2d 248, 954 P.2d 511] (*Cedars-Sinai*), this court declined to create a tort remedy for intentional *first party* spoliation of evidence, that is, the intentional destruction of evidence by a party to the underlying cause of action to which the evidence is relevant. What we said in *Cedars-Sinai* regarding the process this court uses in deciding whether to recognize a new tort is relevant here as well.

"In considering whether to create a tort remedy . . . , we begin with certain general principles of tort law. 'A tort, whether intentional or negligent, involves a violation of a *legal duty*, imposed by statute, contract or otherwise, owed by the defendant to the person injured.' (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 6, p. 61 [original italics].) At issue here is whether to impose on parties to a lawsuit a duty to avoid the intentional destruction of evidence relevant to the lawsuit. As we have stated, the concept of duty ' "is a shorthand statement of a conclusion, rather than an aid to analysis in itself." ' (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) It is ' "only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' (*Ibid.*) Thus, we must examine and weigh the relevant 'considerations of policy' that favor or oppose a tort remedy . . . ." (*Cedars-Sinai, supra*, 18 Cal.4th 1, 8.)

In beginning this analysis, it is important to keep in mind that "[t]he intentional destruction of evidence is a grave affront to the cause of justice and deserves our unqualified condemnation." (*Cedars-Sinai, supra*, 18 Cal.4th 1, 4.) As is true of intentional first party spoliation, intentional third party spoliation increases the risk of an erroneous decision on the merits of the cause of action. Destruction of evidence can also increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence, which may be less accessible or less persuasive. Thus, there is no doubt that third party spoliation is the sort of injury for which tort law ordinarily would provide a remedy. (See Civ. Code, § 1714; Rest.2d Torts, § 870 ["One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances."].)

In *Cedars-Sinai, supra*, 18 Cal.4th 1, this court found three factors determinative in deciding not to create a tort remedy for *first party* spoliation: existing nontort remedies for first party spoliation were strong and effective; those existing nontort remedies worked to compensate spoliation victims for the losses caused by first party spoliation; and a tort remedy for first party spoliation would threaten the finality of litigation. Thus, the additional benefits of a tort remedy were not great while its burdens were significant. In the case of intentional *third party* spoliation, however, all of these factors weigh in favor of recognizing a tort remedy.

## A. Availability and Deterrent Effect of Existing Nontort Remedies

Central to this court's decision in *Cedars-Sinai, supra*, 18 Cal.4th 1, *not* to recognize a tort remedy for intentional first party spoliation of evidence was the availability of nontort remedies for that misconduct. First party and third party spoliation, however, differ significantly with respect to the availability and deterrent effect of existing nontort remedies.

As we pointed out in *Cedars-Sinai, supra*, 18 Cal.4th 1, 11-13, those injured by *first party* spoliation have a broad range of nontort remedies available against the spoliator. Probably the most potent of these are the evidentiary inference that the spoliated evidence was adverse to the spoliator (Evid. Code, § 413) and the sanctions of section 2023 of the Code of Civil Procedure. The latter include: monetary sanctions; contempt sanctions; issue sanctions ordering that designated facts be taken as established or precluding the offending party from supporting or opposing designated claims or defenses; evidence sanctions prohibiting the offending party from introducing designated matters into evidence; and terminating sanctions that include striking part or all of the pleadings, dismissing part or all of the action, or granting a default judgment against the offending party.

Nontort remedies for *third party* spoliation are much more limited, as the majority grudgingly admits. The evidentiary inference of Evidence Code section 413 and most of the sanctions of Code of Civil Procedure section 2023 just mentioned cannot be used at all against a third party spoliator, for they are available only against a party to the underlying lawsuit. (See Code Civ. Proc., § 2023, subd. (b)(2) [issue sanctions available only against party], (3) [evidence sanctions available only against party], and (4) [terminating sanctions available only against party]; Evid. Code, § 413 [evidentiary inference available only against party].) Only monetary and contempt discovery sanctions are even potentially available against a third party spoliator, and even these are further restricted by the limitation of section 2023 to "conduct that is a misuse of the discovery process." (Code Civ.

Proc., § 2023, subd. (a).) It is doubtful whether instances of third party spoliation occurring before any party has made a formal discovery request can be characterized as misuses of the discovery process. Likewise, the criminal prohibition against the destruction of evidence, Penal Code section 135, applies only when a person destroys evidence "knowing [it] . . . is about to be produced in evidence upon any trial, inquiry, or investigation . . ."; it is therefore similarly doubtful whether it would apply to evidence destroyed by a nonparty before any request for its production.

Because the nontort remedies for third party spoliation, unlike those for first party spoliation, are not strong and effective deterrents, this factor weighs heavily in favor of recognizing a tort remedy for third party spoliation.

### B. Compensation of the Spoliation Victim Under Existing Nontort Remedies

Tort law seeks not only to deter wrongful conduct but also to compensate those injured by such conduct. The nontort remedies for third party spoliation do not, however, compensate the victim for the harm caused by the destruction of evidence, unlike the nontort remedies for first party spoliation. The evidentiary inference and discovery sanctions available in *first party* spoliation cases compensate for the harm of spoliation by making it more probable that the spoliation victim will prevail on the merits of the underlying lawsuit even without the spoliated evidence. By contrast, the nontort remedies for *third party* spoliation do not increase the spoliation victim's likelihood of prevailing on the underlying lawsuit, nor do they otherwise ameliorate the harm to the spoliation victim. Thus, when third party spoliation does occur the harm to the victim will generally go uncompensated. This is a crucial distinction between first party spoliation and third party spoliation, and it is another very strong reason for recognizing a tort remedy in intentional third party spoliation cases.

### C. Public Policy Favoring the Finality of Judgments

Also weighing in favor of recognizing a tort remedy for *third party* spoliation is the harmony between a tort remedy and the principle that judgments should be final and should not be subject to direct or collateral attack or relitigation once all appeals are exhausted. We refused in *Cedars-Sinai, supra*, 18 Cal.4th 1, to recognize a tort remedy for intentional *first party* spoliation in large measure because such a remedy would amount to a collateral attack on the validity of the judgment on the cause of action to which the evidence was relevant. In an instance of first party spoliation, the

spoliator and the spoliation victim are opposing parties in relation to that underlying cause of action; a first party spoliation tort remedy would effectively require the spoliation victim and the spoliator to relitigate the underlying cause of action. (*Id.* at pp. 8-11.) If the spoliator were found liable in damages to the spoliation victim and were forced to pay the difference between the amount of its actual liability in the underlying action and the amount of liability the trier of fact would have imposed had the spoliated evidence been available, the practical effect of the spoliation action would be to upset the judgment in the underlying action and replace it with a new determination of liability between the parties to that action.

That concern is absent here, because tort liability for *third party* spoliation does not pose a threat to the finality of adjudication. Nothing in the policy favoring finality of adjudication prevents *different* parties from litigating the same issue in different proceedings. A third party spoliator by definition is not a party to the underlying cause of action to which the spoliated evidence is relevant, and the spoliator has not litigated with the spoliation victim any issue relating to that evidence or to the underlying cause of action. Any judgment against the third party spoliator would not alter the previous determination of liability between the spoliation victim and the spoliation victim's opponent in the underlying action. A tort remedy would therefore have no effect, either formally or practically, on the judgment rendered on the cause of action to which the spoliated evidence was relevant and would not clash with the public policy favoring finality of adjudication.

II

Because of the limited and noncompensatory nature of the available nontort remedies and the absence of any conflict with the finality of judgments, I would recognize a narrowly drawn tort remedy for intentional *third party* spoliation. Furthermore, because I would limit liability to spoliation done with the intent of harming the spoliation victim's ability to bring or defend against a legal claim, a tort remedy would not impose a general duty on all persons to preserve everything that may be of relevance to the lawsuit of another, as I explain below.

One principle underlying our tort system is that the circumstances in which it imposes liability and the extent of liability it imposes must be reasonably foreseeable, making it possible for those subject to it to shape their conduct to avoid causing injury and incurring the cost of liability. Ordinarily, one can in any given set of circumstances identify without too much trouble the harm that tort law seeks to prevent, the potential class of victims who would be harmed, and the potential pathways of causation of

the harm. Using this information, one can identify the conduct that will efficiently avoid the harm or reduce the risk of its occurrence.

To ensure that tort liability for third party intentional spoliation of evidence complies with the principle that the circumstances of liability should be foreseeable, I would require the following: It should not be sufficient that the spoliator merely intend to cause the act of spoliation. The spoliator must intend that the act of spoliation affect the outcome of the underlying cause of action to which the evidence is relevant; otherwise stated, the spoliator must intend to harm the spoliation victim's ability to bring or defend against a legal claim.

Because of this intent requirement, there would be no liability if the missing evidence simply has been discarded or misplaced in the ordinary course of events. "Many corporations and other entities, for example, have document retention policies under which they destroy at stated intervals documents for which they anticipate having no further need. (See *Willard* v. *Caterpillar, Inc.* [(1995)] 40 Cal.App.4th 892, 919-924 [48 Cal.Rptr.2d 607]; *Akiona* v. *U.S.* (9th Cir. 1991) 938 F.2d 158, 161; *Lewy* v. *Remington Arms Co., Inc.* (8th Cir. 1988) 836 F.2d 1104, 1111-1112; Fedders & Guttenplan, *Document Retention and Destruction: Practical, Legal and Ethical Considerations* (1980) 56 Notre Dame L.Rev. 5, 7, 11-17, 53-55.)" (*Cedars-Sinai, supra,* 18 Cal.4th 1, 15.) Routine destruction alone would not subject a nonparty to liability for spoliation.

In addition, I agree with defendant hospital that, to reduce uncertainty in the fact of harm, the underlying action should be resolved before the spoliation victim may proceed with an intentional third party spoliation claim. More specifically, I would require that the spoliation victim must have prosecuted the underlying action to a conclusion on the merits or to a settlement. This reduces the speculativeness of the spoliation tort remedy, for if the underlying cause of action were never brought or was still pending, the trier of fact in the spoliation action would have to decide not only what the nature of the spoliated evidence would have been, but what other evidence and what legal theories would have been put forth by the parties at a future trial or other proceeding and what the outcome of that future trial or proceeding would have been. (See *Federated Mut.* v. *Litchfield Prec. Comp.* (Minn. 1990) 456 N.W.2d 434, 439 ["resolution of a plaintiff's underlying claim is necessary to demonstrate actual harm and prevent speculative recovery in a spoliation action"].) I agree with plaintiff that resolution of the case by settlement seems adequate for these purposes, for in these circumstances the settlement amount is a reasonable proxy for the litigation value of the underlying action given the absence of the spoliated evidence, and the

settlement process is an adequate incentive for the parties to the underlying action to ferret out other evidence in support of their positions.

Applying to this case my conclusion that we should recognize a tort remedy for intentional third party spoliation of evidence, I would hold that plaintiff's complaint fails to plead adequately such a cause of action. Specifically, plaintiff has not adequately alleged that defendant acted with the intent to harm plaintiff's prospects in its litigation against third parties. I would remand the action and instruct the trial court to give plaintiff an opportunity to attempt to plead an intentional third party spoliation cause of action, for "fairness demands that plaintiff be given an opportunity to give that issue her best shot." (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 28 [192 Cal.Rptr. 233, 664 P.2d 137].)

### III

The majority's reasons for not recognizing a tort remedy for intentional third party spoliation do not withstand scrutiny.

The majority begins by stating that our case law disfavors "derivative" litigation arising out of events occurring in a previous lawsuit. Our case law, however, is more accurately described as disfavoring derivative litigation only if effective nontort remedies exist to vindicate the injured party's interests. The majority relies on discussions in three cases that generally point out the costs of derivative litigation; in each case, this court concluded that the litigation-related misconduct alleged by the plaintiff (false statements made in the course of litigation, improper solicitation of clients, filing frivolous litigation) were problems that had adequate existing remedies available, often within the underlying litigation in which the misconduct occurred. (See *Rubin* v. *Green* (1993) 4 Cal.4th 1187 [17 Cal.Rptr.2d 828, 847 P.2d 1044]; *Silberg* v. *Anderson* (1990) 50 Cal.3d 205 [266 Cal.Rptr. 638, 786 P.2d 365]; *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863 [254 Cal.Rptr. 336, 765 P.2d 498].) Here, as I have described above, there are *no* strong and effective nontort remedies for intentional *third party* spoliation that will either substantially deter such spoliation or compensate the victim when it does occur.

The majority then turns to the related policy of finality in adjudication. It asserts that a tort remedy for third party spoliation threatens finality of adjudication just as much as a tort remedy for first party spoliation would. Not so. As I have explained above, in the case of third party spoliation there has been no prior adjudication between the spoliation victim and the third party spoliator relating to the spoliated evidence.

The majority tries to analogize third party spoliation to third party perjury, claiming that because there is no remedy for the latter there should be no remedy for the former. But, as the majority acknowledges, the situations are dissimilar, because the perjurer must testify in the underlying action and give a version of the events in question. The perjurer's account may be impeached by cross-examination or by other testimony or evidence. Successful impeachment can powerfully affect the jury's ultimate conclusion as to what happened, thus giving the victim of the perjury a means within the underlying action of counteracting the effect of the perjury. In addition, the prospect of cross-examination and impeachment at trial is a deterrent to perjury.

But the spoliation victim is unable to similarly counteract in the trial of the underlying action the effects of third party spoliation. Unlike perjured testimony, destroyed evidence is not a false version of events presented to the jury that the spoliation victim can disprove. Destroyed evidence is a nullity so far as the jury is concerned; evidence that does not exist cannot be presented to the jury and plays no role in its deliberations.

Moreover, the Legislature has decided there can be no civil cause of action for perjury by enacting Civil Code section 47, which immunizes statements made in judicial proceedings from civil liability. (*Silberg* v. *Anderson, supra*, 50 Cal.3d 205, 218.) There is no similar legislative immunity for the intentional spoliation of evidence.

Nor would a tort remedy for intentional third party spoliation create "endless" litigation, as the majority hyperbolically puts it. It would create a single lawsuit between the spoliation victim and the spoliator.

The majority also maintains that we should reject a tort remedy for intentional third party spoliation because it will often be uncertain whether and to what extent an act of spoliation might have affected the outcome in the underlying cause of action and thereby caused harm to the spoliation victim. But there is nothing unique about third party spoliation in its potential for uncertainty in the fact or extent of harm, for almost every tort can present the same uncertainty. It is for this reason that causation and resulting harm are elements of every tort. They provide sufficient protection against uncertain claims in the context of other torts, and there is no reason to expect that they will not do so in the case of third party spoliation as well. This court has never refused to recognize a cause of action simply because a party may have difficulty in proving its elements. And, as discussed above, requiring the spoliation victim to prosecute the underlying action to settlement or judgment as I propose further reduces the speculativeness of the harm caused by the spoliation.

Moreover, in legal malpractice cases our law similarly requires the plaintiff to put on a "trial within a trial"—a retrial of the underlying action in which the malpractice occurred requiring the plaintiff to show that, but for the malpractice, the outcome of the underlying action would have been different. (*United Community Church* v. *Garcin* (1991) 231 Cal.App.3d 327, 334 [282 Cal.Rptr. 368].) "For example, when the error relates to the failure to offer or exclude evidence in the underlying action, the trier of fact must decide the effect of the absence or presence of the evidence and then decide what the 'new' result should have been." (4 Mallen & Smith, Legal Malpractice (4th ed. 1996) Litigation, § 32.1, p. 128.) This method has proven feasible and workable in malpractice cases, and there is no reason to suppose it would not work here as well. (See *Mattco Forge, Inc.* v. *Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 834 [60 Cal.Rptr.2d 780] [trial within a trial is "the most effective safeguard yet devised against speculative and conjectural claims"].)

The majority also asserts that a tort remedy would impose great burdens on businesses to preserve every document and item that might possibly turn out to have some marginal evidentiary value in someone's lawsuit someday. The limited duty I would recognize bears no resemblance to the majority's overwrought speculation. It would not require individuals and entities to preserve everything they possess for possible use in unknown litigation by strangers, only to refrain from destroying evidence with the intent of harming another's litigation prospects.

Nor is the majority correct that it is a rarity for someone other than a party to have an incentive to destroy evidence to alter the outcome of a lawsuit. For example, an indemnity agreement between a party to the lawsuit and third party may give the indemnitor an economic incentive to destroy evidence unfavorable to its indemnitee if it is an indemnitor of the defendant in the underlying action and will be liable for any judgment against the defendant, or if it is an indemnitor of the plaintiff and will be liable for the plaintiff's damages unless the defendant is found liable.

Finally, the majority asserts that it would be anomalous to recognize a tort remedy for intentional third party spoliation when we have refused to do so for intentional first party spoliation. As I have explained, however, there are good reasons for the difference, principally the nontort remedies available in the case of intentional first party spoliation that are not available in the case of intentional third party spoliation.

CONCLUSION

"The law of torts is anything but static, and the limits of its development are never set. When it becomes clear that the plaintiff's interests are entitled

to legal protection against the conduct of the defendant, the mere fact that the claim is novel will not of itself operate as a bar to the remedy." (Prosser & Keeton on Torts (5th ed. 1984) Introduction, § 1, p. 4.)

As the majority agrees, the intentional spoliation of evidence is a " 'grave affront to the cause of justice' " that deserves " 'unqualified condemnation.' " (Maj. opn., *ante*, at p. 469, quoting *Cedars-Sinai, supra*, 18 Cal.4th 1, 4.) It is clear that the interests of the spoliation victim are entitled to legal protection, for, as I have explained, intentional third party spoliation is not the "rare case" (*Cedars-Sinai, supra*, 18 Cal.4th 1, 4) in which the existence of adequate nontort remedies makes it inappropriate to recognize a tort remedy for intentional wrongdoing. There are no strong and effective nontort remedies that would significantly deter third party spoliation, or that would compensate the victim for the loss caused by the spoliation. In particular, the evidentiary inference of Evidence Code section 413 and most of the discovery remedies of Code of Civil Procedure section 2023 are not available in cases of intentional third party spoliation. By contrast, a tort remedy for intentional third party spoliation would deter acts of third party spoliation and compensate for those acts when they occur. Accordingly, unlike the majority, I would recognize a narrowly crafted tort remedy for intentional third party spoliation of evidence, limited to cases in which the spoliator destroys the evidence with the intent of harming the spoliation victim's ability to bring or defend against a legal claim.

Mosk, J., and Werdegar, J., concurred.