MURDOCK, Justice
(dissenting).
I respectfully dissent.
As a preliminary matter, I note that a duty cannot be imposed upon Enterprise Leasing Company, Inc., on the basis of the request made by Thomas O’Troy Killings unless that request was “ ‘ “accompanied by an offer to pay the cost or otherwise bear the burden of preserving [the evidence].””’ 9 So.3d at 1224 (Cobb, C.J., dissenting) (quoting Smith v. Atkinson, 771 So.2d 429, 433 (Ala.2000), quoting in turn Johnson v. United Servs. Auto. Ass’n, 67 Cal.App.4th 626, 627, 79 Cal.Rptr.2d 234, 241 (1998)). In two letters written in the summer of 2004, Killings’s attorney requested that Enterprise Leasing notify Killings before taking any action “to change, modify, destroy, or alter the vehicle in any way” in order that he could make arrangements to preserve any needed evidence in such an event. I see nothing in these requests, or in any other communication made on behalf of Killings, in the way of an offer to pay the expenses of storage, either before or after Enterprise Leasing might find it necessary to “to change, modify, destroy, or alter” the vehicle.
More generally, it is my view that the extended duration of the period between the last communication between the parties in the summer of 2004 and the eventual removal of the van from storage in late November 2006 — a period of approximately two and one-half years — together with the lack of any communication from Killings or his attorney during this extended period, is inconsistent with the continued imposition of a duty upon Enterprise Leasing.
In June 2004, shortly after the accident, Killings’s attorney wrote the first of two letters to Enterprise Leasing. This first letter makes no mention of any time frame during which Enterprise Leasing was being requested not to remove the vehicle from Cockrell’s Body Shop. The second of the two letters, sent on July 16, 2004, stated only that any testing that might be needed “may take several months to conduct.”
According to an affidavit executed by Killings’s attorney, he had a conversation with a representative of Enterprise Leasing shortly after he wrote the July 16, 2004, letter, in which that representative assured the attorney that “the van would not be moved without first letting us know.” Later in the same affidavit, the attorney also recalled that, during that same conversation, he told the representative of Enterprise Leasing “that it could take several years before doing destructive testing because any potential defendants would have to be identified before that testing could occur.” Despite this conversation, the fact remains that Killings did not file an action against Ford Motor Company or any other defendant in relation to his accident until May 10, 2006, almost two years after the last communication with Enterprise Leasing. In addition, another six months passed before Enterprise Leasing had the van transferred to an automo *1226 bile auction in Mississippi on November 27, 2006. During the approximately two and one-half years following the last communication between Killings’s attorney and Enterprise Leasing, Killings did not communicate with Enterprise Leasing. Among other things, Killings did not inform Enterprise Leasing that a lawsuit finally had been filed, nor did he notify Enterprise Leasing of the protective orders entered by the court in that lawsuit.[8]
Given the particular circumstances of this case — including Killings’s failure ever to offer to pay the expense of storing the van, the particularly long delay of almost two and one-half years between the last communication from Killings’s attorney and the eventual removal of the van from storage by Enterprise Leasing, the failure of Killings to maintain any communication with Enterprise Leasing during this time and, in particular, the failure of Killings to apprise Enterprise Leasing of the fact that Killings had, in fact, finally proceeded with a lawsuit — I believe the trial court correctly concluded that Enterprise Leasing acted reasonably and that it was not under a duty to continue storing the van at the time it eventually decided to remove the van to Mississippi, where it was sold as scrap and destroyed.
Although Killings’s attorney did make a specific request to Enterprise Leasing to preserve the van and Enterprise Leasing, through its representative, did represent that it would leave the van in its present location for an unspecified period, I cannot conclude that any duty arising from these facts should persist after an almost two- and-one-half-year period during which Enterprise Leasing received no further communications from Killings or his attorney and no notice that a lawsuit had ever been filed. In this context, I particularly disagree with the statement in the main opinion that a third party, such as Enterprise Leasing, should, under circumstances such as those pi'esented here, continue to have a duty to preserve evidence “regardless of the length of time or the burden involved.” 9 So.3d at 1223. A majority of states other than Alabama do not extend a cause of action against third parties for spoliation of evidence under any circumstances, see 9 So.3d at 1220-21 n. 4, much less circumstances of the nature presented here.
*1227 Having said the foregoing (which is predicated on the viability of the cause of action recognized in Smith v. Atkimon), I would add that I am concerned, as is Justice See, that the benefits of the cause of action recognized by the Court in Smith “are outweighed by the burden to litigants, witnesses, and the judicial system that would be imposed by potentially endless litigation over a speculative loss.” Smith, 771 So.2d at 441 (See, J., dissenting) (quoting Temple Cmty. Hosp. v. Superior Court, 20 Cal.4th 464, 478, 976 P.2d 223, 233, 84 Cal.Rptr.2d 852, 862 (1999)). In my opinion, this concern is validated by the fact that this cause of action is to be applied to the circumstances presented in a case such as this one.

. The main opinion makes mention of a subpoena supposedly received by Enterprise Leasing in October 2006 and contends that, ”[u]nder these circumstances, the assertion made by Justice Murdock in his dissent that Enterprise Leasing had 'no notice that a lawsuit had ever been filed' is, at the least, misleading.” 9 So.3d at 1222 n. 5. The only factual "circumstances” the trial court could properly consider, however, were those presented to it at the time it held a hearing and issued a ruling on Enterprise Leasing’s summary-judgment motion. Serra Chevrolet, Inc. v. Edwards Chevrolet, Inc., 850 So.2d 259, 265 (Ala.2002) (noting that on a motion for a summary judgment " ‘the trial court can consider only the material which is before it at the time of submission of the motion’ ” (quoting Prudential Ins. Co. of America v. Coleman, 428 So.2d 593, 598 (Ala.1983))). In evaluating a summary judgment, this Court is limited to the same evidence that was presented to the trial court before its ruling on the summary-judgment motion. See, e.g., Cleveland v. Central Bank of the South, 574 So.2d 741, 743 (Ala.1990) (stating that this Court “must review only those matters that were before the trial court when it made its decision”). Neither the content of any subpoena that might have been served upon Enterprise Leasing in October 2006 nor any evidence that Enterprise Leasing was even served with a subpoena was before the trial court at the time of its ruling on Enterprise Leasing’s summary-judgment motion. Concomitantly, neither the content of any subpoena nor any evidence as to whether any subpoena was actually served on Enterprise Leasing is part of the record this Court may properly consider on appeal.