STUART, Justice.
After Thomas O’Troy Killings was injured in an automobile accident in May 2004, he sued in the Mobile Circuit Court the manufacturer of the van he was driving at the time of the accident and various other entities that had performed maintenance on that van. Enterprise Leasing Company, Inc., owned the van, and when it sold the wrecked van for scrap, Killings added Enterprise Leasing as a defendant, claiming that it had negligently allowed evidence crucial to his pending action against the other defendants to be destroyed. After the other defendants were dismissed from the case, the trial court entered a summary judgment in favor of Enterprise Leasing, and Killings appealed. We reverse and remand.
*1218 I.
On May 11, 2004, Killings was driving a 2001 Ford E-150 van on behalf of his employer, CBIZ Network Solutions, LLC, when the van lost its right rear wheel while traveling westbound on 1-10 in Mobile. The loss of the wheel caused to van to leave the roadway, and, in the ensuing accident, Killings suffered injuries including a broken clavicle and a broken thumb.[1]
Following the accident, the wrecked van, which CBIZ had been leasing from Enterprise Leasing, was taken to Duke’s Garage in Mobile. Several days later, Enterprise Leasing had the van moved to Cockrell’s Body Shop in Theodore. On June 21, 2004, Shane Lucado, an attorney retained by Killings, telephoned Enterprise Leasing to request that the van be preserved for investigative purposes. A follow-up letter sent by Lucado to Enterprise Leasing the next day memorialized that conversation, stating:
“Thank you for taking the time to speak with me yesterday. As you are aware, the vehicle in which Mr. Killings was riding in at the time of his injuries is very important to our investigation. Therefore, as I stated to you during our conversation, I would like to inspect the vehicle on July 2, 2004.
“Additionally, let me take this opportunity to cover the things I need to cover with regard to the vehicle. I ask that you please do not change, modify, discard, destroy, alter, sell, or remove this vehicle from Cockrell’s Body Shop without first giving me notice of [your] intentions. If it becomes necessary for you to change, modify, destroy, or alter the vehicle in any way, please notify me immediately so that I can make arrangements to preserve the evidence needed in my investigation. If the subject vehicle is changed in any manner which compromises the integrity of my investigation, you may be liable for negligent spoliation of evidence under Alabama law. See Brown Electro Mechanical Systems, Inc. v. Thompson Engineering, et al., [848 So.2d 238] (Ala.2002).”
Subsequently, on July 2, 2004, Lucado and A.E. Carden, a mechanical engineer he had hired, visited Cockrell’s Body Shop to inspect the van. On July 16, 2004, Lucado sent Enterprise Leasing the following letter, notifying it that further testing would likely be needed and again requesting that the van be preserved:
“Please be advised that we need to perform destructive testing on the van Mr. Killings was driving at the time of his accident on May 11, 2004. This testing may take several months to conduct. As such, we need to keep the van in its present condition. We ask that Enterprise Leasing not change, modify, discard, destroy, alter, sell, or remove this vehicle from Cockrell’s Body Shop without first giving me notice of its intentions. If it becomes necessary for Enterprise Leasing to change, modify, destroy, or alter the vehicle in any way, please notify me immediately so that I can make arrangements to preserve the evidence needed in my investigation. If the subject vehicle is changed in any manner which compromises the integrity of my investigation, you may be liable for negligent spoliation of evidence under Alabama law. See Brown Electro Mechanical Systems, Inc. v. Thompson Engineering, et al., [848 So.2d 238] (Ala.2002).
“Should you have any questions, please feel free to contact me.”
*1219 Shortly thereafter, Lucado spoke with Jason Leone, a claims representative from Cambridge Integrated Services, which was representing Enterprise Leasing in connection with the accident. In an affidavit, Lucado recalled that conversation as follows:
“Mr. Leone said that he would like to have the van inspected. I told Mr. Leone that it would be fíne to inspect the van, but that no destructive testing could be done. Mr. Leone assured me that no destructive testing would be done and that the van would not be moved without first letting us know. During the conversation, I explained that we were investigating the cause of the axle breaking, that we had inspected the van and that we were investigating to determine whether there was a manufacturing defect in the wheel bearing or whether the van was improperly maintained or serviced. I told Mr. Leone that it could take several years before doing destructive testing because any potential defendants would have to be identified before that testing could occur. I asked Mr. Leone what Enterprise’s role was in the maintenance and service of the vehicle and explained that Enterprise did not seem to be a target as a defendant. During the conversation, Mr. Leone assured me that the van would stay right where it was and would not be moved without calling first and indicated that there would be no problem leaving the van at Cockrell’s. I then received a letter from Mr. Leone indicating that an engineer would be inspecting the van in early August 2004.”
On May 10, 2006, Killings sued Ford Motor Company (the manufacturer of the van), Dobbs Mobile Bay, Inc., d/b/a Tread-well Ford (a Ford dealership that had performed maintenance on the van), Firestone Tire & Service Center (an automobile-repair shop that had also performed maintenance on the van), BFS Retail and Commercial Operations, LLC (the corporate parent of Firestone Tire & Service Center), Bridgestone Americas Holding, Inc. (the corporate parent of BFS Retail and Commercial Operations, LLC), and various other fictitiously named parties in the Mobile Circuit Court. Killings’s lawsuit included a product-liability claim made pursuant to the Alabama Extended Manufacturer’s Liability Doctrine (“AEMLD”), a breach-of-warranty claim, and various negligence and wantonness claims. The discovery process ensued, during which the trial court issued protective orders at the request of both Ford and the Firestone defendants prohibiting the parties, their representatives, or any other persons from disposing of or materially altering the subject van. Nevertheless, on November 27, 2006, Enterprise Leasing, apparently unaware of those protective orders and without giving notice to any of the parties, had the van transferred to Man-heim Auto Auction in Mississippi where it was sold for scrap and subsequently destroyed. On approximately December 6, 2006, the parties discovered that the van had been moved and destroyed.
On March 16, 2007, Killings amended his complaint to include third-party spoliation claims against Enterprise Leasing and Cockrell’s Body Shop. The original defendants then all moved to dismiss the claims against them and, on March 23, 2007, Killings agreed to dismiss its claims against all the original defendants except Ford. On June 15, 2007, a hearing was held, after which the trial court dismissed the claims against Ford and Cockrell’s Body Shop, leaving only the spoliation claim against Enterprise Leasing to be resolved.
On December 28, 2007, Enterprise Leasing moved for a summary judgment, argu *1220 ing that it had no duty to preserve the van, especially for a period exceeding two and a half years, that it had no knowledge that there was pending litigation involving the van, and that the van was not vital to Killings’s case. The trial court scheduled a hearing on the motion for January 11, 2008. On January 9, 2008, Killings filed his response to Enterprise Leasing’s motion and moved the trial court to continue the scheduled hearing. On January 11, 2008, Enterprise Leasing moved the trial court to strike Killings’s response. The January 11, 2008, hearing was ultimately held as scheduled, and, at its conclusion, the trial court entered an order granting Enterprise Leasing’s motion for a summary judgment without stating its rationale.[2]
On February 10, 2008, Killings filed a motion to alter, amend, or vacate the trial court’s judgment, arguing that the trial court had erred both by entering a summary judgment in favor of Enterprise Leasing and by failing to continue the hearing on Enterprise Leasing’s summary-judgment motion either on the basis of Rule 56(c)(2), Ala. R. Civ. P., which requires a hearing on a summary-judgment motion to be held at least 10 days after that motion is served, or pursuant to Rule 56(f), Ala. R. Civ. P., which provides for a continuance so that the opposing party can obtain additional evidence.[3] On March 11, 2008, the trial court denied Killings’s motion, and, on March 14, 2008, Killings filed his notice of appeal to this Court.
II.
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
III.
In Smith v. Atkinson, 771 So.2d 429, 432 (Ala.2000), this Court recognized that general principles of negligence law afford an Alabama plaintiff a remedy when evidence crucial to that plaintiffs case is lost or destroyed through the acts of a third party.[4] We further explained how a *1221 claim of spoliation of evidence against a third party fit within the negligence framework:
“As in all negligence actions, the plaintiff in a third-party spoliation case must show a duty to a foreseeable plaintiff, a breach of that duty, proximate causation, and damage. Crowne Invs., Inc. v. Bryant, 638 So.2d 873, 878 (Ala.1994). We announce today a three-part test for determining when a third party can be held liable for negligent spoliation of evidence. In addition to proving a duty, a breach, proximate cause, and damage, the plaintiff in a third-party spoliation case must also show: (1) that the defendant spoliator had actual knowledge of pending or potential litigation; (2) that a duty was imposed upon the defendant through a voluntary undertaking, an agreement, or a specific request; and (3) that the missing evidence was vital to the plaintiffs pending or potential action. Once all three of these elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence the plaintiff would have recovered in the pending or potential litigation; the defendant must overcome that rebuttable presumption or else be liable for damages.”
Smith, 771 So.2d at 432-33.
The trial court did not state for the record its rationale for entering a summary judgment in favor of Enterprise Leasing; however, in its motion for a summary judgment, Enterprise Leasing argued that Killings’s third-party spoliation claim failed all three additional prongs of the Smith test. In their briefs to this Court, both parties primarily focus on whether Enterprise Leasing had a duty to preserve the wrecked van, but they nevertheless address all three prongs of the Smith test. Accordingly, we will consider all three prongs in turn.
In regard to whether it had actual knowledge of litigation involving the wrecked van, Enterprise Leasing does not, on appeal, deny that it had knowledge of the action filed by Killings; rather, it argues that Killings failed to present substantial evidence of that fact. Specifically, Enterprise Leasing argues that Killings submitted no evidence in opposition to its motion for a summary judgment indicating that Enterprise Leasing was ever informed that an action involving the wrecked van had been filed at any time during the approximately two-and-one-half-year period between the date of the accident and the date the wrecked van was sold. However, Enterprise Leasing overlooks the fact that Alabama law requires only that the accused spoliator have “actual knowledge of pending or potential litigation.” Smith, 771 So.2d at 432 (emphasis *1222 added). Even if we accept that Enterprise Leasing had no actual knowledge of Killings’s action, it is undisputed that Enterprise Leasing had actual knowledge that there was the potential for litigation involving the wrecked van; the two letters Lucado sent to Enterprise Leasing in June and July 2004 are conclusive evidence of that fact.[5] Moreover, although Enterprise Leasing highlights the lack of communication by Killings after the period immediately following the accident, Killings submitted evidence indicating that Enterprise Leasing was apprised early on that the process might take “several years.” See affidavit of Shane Lucado, quoted supra. Thus, Killings has established, at the very least, that a genuine issue of material fact exists on this point.
We next turn to whether Enterprise Leasing had a duty to preserve the wrecked van. In Smith, we recognized that a third party has no general duty to preserve evidence; however, we recognized that such a duty may arise if: 1) the third party voluntarily assumes the duty to preserve evidence; 2) the third party agrees with the plaintiff that it will preserve the evidence; or 3) the plaintiff makes a specific request to the third party to preserve the evidence. 771 So.2d at 433. In the present case, Killings argues that a duty was established in both of the latter two ways — Enterprise Leasing agreed with Killings that it would preserve the wrecked van and Killings made a specific request to Enterprise Leasing to do so.
In an affidavit filed in response to Enterprise Leasing’s summary-judgment motion, Killings’s attorney, Shane Lucado, swore that, during a conversation with Enterprise Leasing’s claims representative, “[the representative] assured me that the van would stay right where it was and would not be moved without calling first.” Additionally, two letters sent to Enterprise Leasing by Killings’s attorney also requested that the wrecked van be preserved and stated that “[i]f it becomes necessary for Enterprise Leasing to change, modify, destroy, or alter the vehicle in any way, please notify me immediately so that I can make arrangements to preserve the evidence needed in my investigation.”
Enterprise Leasing argues that Killings’s request to preserve the wrecked van was insufficient to create a duty because the request was not accompanied by an offer to pay the cost or otherwise bear the burden of preservation. See Smith, 771 So.2d at 433 (“ ‘The specific request to preserve must be accompanied by an offer to pay the cost or otherwise bear the burden of preserving. We do not think a tort duty to preserve should be created simply by someone specifically requesting a third party to preserve something.’ ” (iquoting Johnson v. United Servs. Auto. Ass’n, 67 Cal.App.4th 626, 638, 79 Cal.Rptr.2d 234, 241 (1998))). Killings responds that his attorney did offer to bear *1223 the burden of preservation when he stated that he would “make arrangements to preserve the evidence needed in [his] investigation” if it became necessary “for Enterprise Leasing to change, modify, destroy, or alter the vehicle in any way.” However, it is ultimately unnecessary for us to determine whether Killings’s request is viewed as including an offer to bear the burden of preservation because Enterprise Leasing has not refuted the other evidence put forth by Killings indicating that it agreed to preserve the wrecked van. By making that agreement, Enterprise Leasing assumed the duty of preserving the van.[6]
Once Enterprise Leasing assumed that duty, it is ultimately of no import that approximately two and a half years passed between the date of the accident and the date the van was sold. Enterprise Leasing emphasizes this fact throughout its brief to this Court, arguing that it had no contact from Killings throughout most of that period and that it is too onerous a burden for one to reasonably expect a third party to preserve evidence for that length of time. However, as discussed above, the evidence indicates that Enterprise Leasing was apprised early on that the process might take “several years” and that Enterprise Leasing nevertheless agreed that “the van would stay right where it was and would not be moved without calling first.”
Moreover, Enterprise Leasing initially had no responsibility or duty whatsoever to preserve the wrecked van after the accident. See Smith, 771 So.2d at 433 (“If the third party does not wish to take responsibility for evidence, it can decline the responsibility, shifting the risk of loss back to the plaintiff.”). As a corollary to that principle, Enterprise Leasing could have rid itself of that duty even once it had assumed it by notifying Killings that it wished to do so. It could not, however, unilaterally decide to shed itself of that assumed duty without even attempting to provide any notice to Killings, regardless of the length of time or the burden involved.[7]
Last, we consider whether the missing evidence was vital to Killings’s underlying action. Among the evidentiary material accompanying Killings’s response to Enterprise Leasing’s motion for a summary judgment was an affidavit from A.E. Carden, the mechanical engineer who examined the wrecked van with Killings’s attorney in July 2004. In that affidavit, Carden stated:
“I was retained by M. Shane Lucado, attorney for Thomas Killings for the purpose of determining the cause of Mr. Killings accident that occurred in Mobile on May 11, 2004. On July 2, 2004,1 met Mr. Lucado at the Cockrell Body Shop [sic] in Theodore, Alabama, for the pur *1224 pose of inspecting the vehicle involved in this accident, a Ford van, VIN 1FTRE14W01HB71346, Alabama License Plate 2B6705L. Among other things, I visually inspected the portions of the real' axle that [were] readily visible, took several photographs, and samples. I also read the accident report. Mr. Lucado had the wheel-tire which had separated from the vehicle. I subsequently prepared a preliminary reported for Mr. Lucado (see copy attached). I am of the opinion that this accident resulted from a major failure of the right rear axle of the van, which caused the right rear tire and wheel to separate from the vehicle, resulting in loss of control and caused the vehicle to roll over. The cause of this failure (whether by improper or defective design, manufacture or maintenance) could only be determined by further testing which never occurred because the vehicle was disposed of.”
(Emphasis added.) Enterprise Leasing argues that, because Killings removed and presumably retains possession of the right rear wheel, tire, and brake assembly of the wrecked van, he could have continued to pursue his underlying claims; therefore, it concludes, the van itself was not vital to Killings’s action. However, Enterprise Leasing has not supported this argument with any evidence nor has it in any way responded to Carden’s affidavit stating the contrary. Killings has therefore established the existence of a genuine issue of material fact in regard to whether the missing evidence was vital to Killings’s underlying action.
IV.
Enterprise Leasing moved for a summary judgment on Killings’s third-party spoliation claim against it, arguing that it had no knowledge of litigation involving the wrecked van, that it had no duty to preserve the wrecked van, and that the wrecked van was not vital to Killings’s underlying claims. Enterprise Leasing could have shown that it was entitled to a summary judgment by establishing that there was no genuine issue of material fact in regard to any of those three arguments; however, it failed to do so. Killings put forth evidence establishing at least a genuine issue of material fact with regard to each argument; therefore, the summary judgment was erroneous. It is hereby reversed and the case remanded.
REVERSED AND REMANDED.
LYONS, WOODALL, SMITH, BOLIN, and PARKER, JJ., concur.
COBB, C.J., and SEE and MURDOCK, JJ., dissent.

. Killings filed a worker's compensation claim against CBIZ that was settled in April 2006. That claim is not involved in this appeal.

. A transcript of the January 11, 2008, hearing is not in the record; however, Killings states in his appellate brief that, at that hearing, the trial court denied both his motion to continue and Enterprise Leasing’s motion to strike.

. Enterprise Leasing served its summary-judgment motion on December 28, 2007. When, as required by Rule 6(a), Ala. R. Civ. P., Saturdays, Sundays, and legal holidays (here, New Year's Day) are excluded, the January 11, 2008, hearing was held only nine days after the filing of the motion.

.Enterprise Leasing argues that this Court should overrule Smith and join the majority of states that do not recognize third-party *1221 spoliation claims. In support of its argument, it notes that a California case relied upon by the Smith Court, Johnson v. United Services Automobile Ass'n, 67 Cal.App.4th 626, 79 Cal.Rptr.2d 234 (1998), was subsequently overruled. However, as evidenced by Justice See's dissenting opinion in Smith, this Court was already aware at the time Smith was decided that California no longer recognized the tort of spoliation of evidence either by a party or by a third party. See Smith, 771 So.2d at 440 (See, J., dissenting) (“Several years after a California District Court of Appeal, in Smith v. Superior Court, 151 Cal. App.3d 491, 198 Cal.Rptr. 829 (1984), had become the first court to recognize the tort of intentional spoliation of evidence by a third party, the Supreme Court of California joined the majority of jurisdictions and held that California does not recognize the tort of spoliation of evidence either by a party or by a third party. See Cedars-Sinai Med. Ctr. v. Superior Court, 18 Cal.4th 1, 954 P.2d 511, 74 Cal.Rptr.2d 248 (1998); Temple Community Hosp. v. Superior Court, 20 Cal.4th 464, 976 P.2d 223, 84 Cal.Rptr.2d 852 (1999).“). We decline to reconsider Smith at this time.

. Enterprise Leasing was apparently also served with a subpoena by BFS Retail and Commercial Operations in October 2006, approximately a month before it sold the wrecked van. However, Killings failed to introduce evidence of that subpoena into the record until after the trial court had held a hearing and had ruled on Enterprise Leasing’s summary-judgment motion. This evidence is partially the reason for Killings’s argument on appeal that the trial court erred by denying his motion to .continue the summary-judgment hearing. However, because it is undisputed that Enterprise Leasing had actual knowledge of potential litigation involving the wrecked van, which is all the law requires, it is ultimately irrelevant whether it had knowledge that litigation was actually pending as well. Under these circumstances, the assertion made by Justice Murdock in his dissent that Enterprise Leasing had “no notice that a lawsuit had ever been filed” is, at the least, misleading.

. Chief Justice Cobb and Justice Murdock, in their dissents, emphasize that Enterprise Leasing had no duty to preserve the wrecked van because Killings never offered to pay it to do so. However, this Court made it clear in Smith that the duty to preserve evidence can be imposed even in the absence of such an offer if a defendant voluntarily undertakes to do so or agrees with the plaintiff that it will do so. See Smith, 771 So.2d at 432 (stating that the duty to preserve evidence can be “imposed upon the defendant through a voluntary undertaking, an agreement, or a specific request” (emphasis added)). Because Enterprise Leasing voluntarily agreed to preserve the wrecked van, it took upon itself the duty to do so, and Killings's failure to offer to pay the associated storage costs is wholly irrelevant.

. Killings argues that Enterprise Leasing’s complaints about the burden associated with preserving the wrecked van are disingenuous and has submitted an affidavit from the manager of Cockrell's Body Shop indicating that the wrecked van was being stored at no cost to Enterprise Leasing.